**BEL MARIN KEYS COMMUNITY SERVICES DISTRICT, a Public District of the State of California, O. W. Osterlund, S. A. Sharp, H. D. Lawson, George Shuleshko, Adeline D. Fox, Charles W. Fox, and Stig Rasmussen, Appellants,**

v.

**BEL–MARIN ENTERPRISES, INC., a California Corporation, Kal W. Lines, Trustee in Bankruptcy, Waterway Properties, Page Construction, Western Dock Enterprises, Robert Conway, Mary Gouveia, Duncan Haroldson, Inc., Does I through X, Inclusive, Appellees.**

No. 76–1982.

United States Court of Appeals, Ninth Circuit.

Aug. 10, 1978.

Rehearing Denied Sept. 21, 1978.

---

Albert Bianchi, of Bianchi, Hoskins & Rosenberg, Rafael, Cal., for appellants.

Joseph A. Forest, of Carrow & Forest, Novato, Cal., for appellees.

Appeal from the United States District Court, Northern District of California.

Before KILKENNY, TRASK and SNEED, Circuit Judges.

KILKENNY, Circuit Judge:

This is an appeal from a judgment of the district court affirming the judgment of the bankruptcy court holding that the appellee trustee in bankruptcy was the owner of a waterfront easement with the right to install, construct, maintain, and operate docks on the easement, free and clear of any claim of the appellants, the public, or any other person or entity. The sole issue we consider is the jurisdiction of the bankruptcy court to decide the question of the existence of the easement, if any, known to the record as *Easement A.*

## PROCEDURAL BACKGROUND

The litigation originated in the Superior Court of the State of California for the County of Marin on January 25, 1974. The appellants, later named as defendants in the proceeding in the bankruptcy court, filed an action against appellees where they sought a temporary and permanent injunction restraining the appellees from proceeding with the construction of docks, the installation of pilings, piers, or other permanent fixtures on Lot 168 and other relief. Additionally, the complaint alleged that appellant Bel Marin Keys Community Services District [District] was the owner of Lot 168 on which a lagoon was created, and shown upon a certain map entitled "Bel-Marin Keys, Unit No. 2 in the County of Marin, California", filed July 27, 1964, in Book 12 of Maps, Page 87, Marin County Records; that named individual appellants were owners and inhabitants of improved residential real property within the appellant District fronting on said lagoon and adjacent to said Lot 168; that without right or authority, the appellees encroached on the said Lot 168 and lagoon attempting the construction of the docks and piers previously mentioned.

In addition to the restraining order appellants requested a declaration that the docks constituted a public and private nuisance and an order that a public and private right of access existed for use and enjoyment of the entire lagoon area. On the day the complaint was filed, the state court issued a temporary restraining order halting further dock construction.

In September, 1974, Bel-Marin Enterprises, Inc. was adjudicated a bankrupt and appellee, Lines, was appointed as its trustee. On December 6, 1974, the trustee filed suit in bankruptcy court against those who had sought the injunction in state court. His complaint charged that as owner of the 30 lots constituting "The Gardens" apartments he was also owner of *Easement A* adjacent to the apartments which extended over the lagoon area of Lot 168 owned by the District. As rightful owner of this easement, the trustee alleged that he was entitled to construct and maintain docks on the easement free from any claim of the appellants or the public. Appellants filed an answer denying that the trustee had colorable or any title to the subject property and denying that the bankruptcy court had jurisdiction to hear the controversy.

After a trial, the bankruptcy court entered findings of fact and conclusions of law reciting that: (1) it had jurisdiction; (2) that there was no merit to the causes of action alleged in the appellants' state court action; (3) that the injunction and restraining order in the state court proceeding constituted a cloud upon the *title of the trustee* [Emphasis Supplied]; (4) that the trustee was the owner of *Easement A* free and clear of any claims of public or private persons; (5) that the trustee had the right to install and operate docks on the easement free from interference.

The decision of the bankruptcy court was appealed to the United States District Court for the Northern District of California. From the summary judgment of the district court affirming the decision of the bankruptcy court, this appeal is prosecuted.

### FACTUAL BACKGROUND

Before us is a land development project originated by Jack West, Jr. and his wife [West] pursuant to a number of approved subdivisions and subdivision maps and plans, two of which are directly involved in this litigation: "The Gardens" at Bel Marin Keys and Bel-Marin Keys Unit No. 2. As part of the development of this boat oriented community, a man-made lagoon was created. Lot 168 of the development underlay this lagoon. The subdivision plans for "The Gardens" provided for the creation of 30 apartment units. The first plans for this subdivision were filed on the 23rd day of December, 1963, in Volume 12 of Maps at page 52.

On March 11, 1964, West executed and delivered to Eureka Auxiliary Corporation, as trustee, and Eureka Federal Savings & Loan of San Francisco, as beneficiary, a deed of trust and assignment of rents for the 30 lots making up "The Gardens" apartments to secure the payment of the sum of $20,000.00. This deed of trust was recorded on March 12, 1964.

On July 27, 1964, West filed and recorded a map entitled, "Bel-Marin Keys, Unit No. 2, in the County of Marin, California." This map conformed to all California state legal requirements and contained the following declaration by West in the Owners Certificate.

> "*We hereby establish an exclusive private easement as follows: That portion of the area designated as 'private boat docking, storage and anchorage easement' and lying within the prolongation of the sideline of each lot shown hereon is hereby established as an exclusive private easement for boat docking, storage and anchorage purposes for the sole and exclusive use of the owner of such lot.*
>
> "*We hereby reserve 'Easement A' as an exclusive easement for private boat docking, storage and anchorage purposes for the exclusive use of the owners of record of Lots 1 to 30 inclusive of 'The Gardens' as recorded in Volume 12 of Maps, Page 52, records of Marin County.*
>
> "*We also hereby certify that the subscribers of this statement are all those having any record title interest in the land shown on this map.*" [Emphasis supplied.]

West was still the owner of Lots 1 to 30, inclusive, of "The Gardens" when the owners' declaration was filed. This document was recorded in Volume 12 of Maps, Page 87, of the Records of Marin County, California, on the 27th day of July, 1964. It

consists of seven sheets of maps as well as a detailed metes and bounds description of *Easement A; Easement A* being further identified on page 7 by the following language:

"Exclusive Easement for private boat docking, storage and anchorage purposes for the exclusive use of the owners of record of Lots 1 to 30 inclusive of 'The Gardens' as recorded in Volume 12 of Maps, page 52."

Subsequently, on January 3, 1966, West executed and delivered a donative conveyance by deed of Lots 167 and 168, the lagoon lots, to the District. This deed contained a description of the property conveyed, with the following reservation:

"*RESERVING therefrom a private exclusive easement for private boatdocking, storage and anchorage purposes, over, across, upon and under those portions of those certain 20 foot private boatdocking, storage and anchorage easements*[1] *lying within the prolongation of the lot sidelines of Lot 167, as shown on that certain map entitled 'Map of Bel Marin Keys, Unit 1–A, in the County of Marin, California', filed January 14, 1963 in Book 11 of Maps at page 58, Marin County Records, and Lot 168, as shown upon that certain map entitled 'Bel Marin Keys, Unit No. 2, in the County of Marin, California', filed July 27, 1964 in Book 12 of Maps at page 87, Marin County Records.*" [Emphasis supplied.]

The District subsequently passed two resolutions accepting the donative deed of Lots 167 and 168. Both resolutions of acceptance contained the words "Subject to all existing easements of record.", but did not mention questioned "*Easement A.*"

Subsequently, on May 10, 1967, West, for the first time, conveyed title to Lots 1 through 30, inclusive, to appellants Title & Trust Company, a California corporation, the predecessor in interest of the bankrupt and the trustee in bankruptcy. The description of the property was as follows:

"PARCEL 1

Lots 1 through 30, inclusive, as said Lots are shown upon that certain Map entitled, 'The Gardens' at Bel-Marin Keys, in the County of Marin, California, filed December 23, 1963, in Book 12 of Maps at page 52, Marin County Records."

It is observed that this conveyance made no reference to Easement A as shown on the map filed July 27, 1964. Subsequently, on February 21, 1968, West conveyed three additional parcels of property to Title Insurance & Trust Company without mentioning *Easement A.* These deeds do mention *Parcel A,* a reservation the record first notes on a map recorded on December 23, 1963.[2] However, the precise boundaries of *Parcel A* are not recorded on the map, and appellees have made no claim that *Parcel A* may be used for boat dock construction.

## DISCUSSION

The first bridge we must cross is that of the appellants' challenge to the jurisdiction of the bankruptcy court to determine the validity of *Easement A* as a valid and subsisting property right, title to which was vested in the bankrupt Bel-Marin Enterprises, Inc., and passed to the trustee in bankruptcy upon the adjudication of bankruptcy. If the bankruptcy court had jurisdiction to pass on the issue, we would have

---

1. The 20 foot easement is not here involved.

2. "*The area shown upon said map as 'Parcel A' is hereby set aside for the joint and common use of the owners of the lots shown on said map. Upon conveyance of any lot shown upon said map, there shall also be conveyed to the grantee of said lot an undivided interest in said 'Parcel A' for the following purposes:*

1. *That portion of 'Parcel A' lying between the street line and the broken line designated 'Use Line' to be used for access, parking and utility purposes only;*

2. *That portion of 'Parcel A' lying to the rear of the broken line designated 'Use Line' to be used for recreation purposes only.*

*'Parcel A' shall be kept open and free from buildings and structures of any kind, provided that structures and buildings intended solely for the joint and common recreational use by the owners of lots in said subdivision may be constructed in that portion of 'Parcel A' lying to the rear of the 'Use Line.'*" [Emphasis supplied.]

no difficulty in affirming the judgment of the district court. The collateral issues raised by appellants would then be foreclosed by the findings of the bankruptcy court. If, however, the bankruptcy court was without jurisdiction, the judgment of the district court must be vacated and the cause remanded with directions.

Both the facts in the record touching upon the existence of *Easement A* and the California law on easements are exceptionally complex. For that matter, neither side claims that the California courts have passed on important questions essential to the validity of the purported Easement A. For example, (1) whether an easement can be created on property where there is no outright grant; (2) whether an easement can be created where the grantor is the owner of both the dominant and servient estates at the time of the purported creation;[3] and (3) whether the failure to mention *Easement A* in any of the subsequent conveyances might have kept Lot 168 clear of the encumbrance. Manifestly, on this record the bankruptcy court was confronted with a record presenting unresolved issues of California real property law and significant issues of fact.

As early as 1925, our Supreme Court in the leading case of *Harrison v. Chamberlin*, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897 (1926), offered specific guidelines for determining when a bankruptcy court may exercise jurisdiction where an adverse claim to property had been asserted. There, in distinguishing between a controversy arising in a bankruptcy proceeding and one arising in an administrative proceeding in bankruptcy, Mr. Justice Sanford said:

"2. It is well settled that a court of bankruptcy is without jurisdiction to adjudicate in a summary proceeding a controversy in reference to property held adversely to the bankrupt estate, without the consent of the adverse claimant; *but*

*resort must be had by the trustee to a plenary suit." Id.* at 193, 46 S.Ct. at 468. [Emphasis supplied.]

Noting that the bankruptcy court was not ousted of its jurisdiction by the mere assertion of an adverse claim, the Court restated the rule that a bankruptcy court, in the first instance, had authority to determine whether it had jurisdiction to proceed and to "enter upon a preliminary inquiry to determine whether the adverse claim is *real and substantial or merely colorable. And if found to be merely colorable the court may then proceed to adjudicate the merits summarily; but if found to be real and substantial it must decline to determine the merits and dismiss the summary proceeding." Id.* at 194, 46 S.Ct. at 468. [Emphasis supplied.]

The *Harrison* Court adopted the rule that a claim is to be deemed of a substantial character when the claimant's contention

" 'discloses a contested matter of right, involving some fair doubt and reasonable room for controversy' [case citations], in matters *either of fact or law; and is not to be held merely colorable unless the preliminary inquiry shows that it is so unsubstantial and obviously insufficient, either in fact or law, as to be plainly without color of merit, and a mere pretense." Id.* at 195, 46 S.Ct. at 469. [Emphasis supplied.]

Justice Sanford concluded his opinion with the following observation:

*"In the present case it clearly appears that the validity of the respondent's claim depended upon disputed facts, as to which there was a conflict of evidence, as well as a controversy in matter of law. Its determination involved 'fair doubt and reasonable room for controversy' both as to fact and law. It was therefore substantial, and not merely colorable; and its merits could only be adjudged in a*

---

**3.** California law may be read to prohibit an owner from creating an easement in his own land.

"§ 805. *Persons who cannot hold servitudes BY WHOM HELD.* A servitude thereon cannot be held by the owner of the servient tenement."

*Leggio v. Haggerty,* 231 Cal.App.2d 873, 42 Cal.Rptr. 400 (1965).

Cal.Civ.Code § 805 (West).

*plenary suit." Id.* at 195, 46 S.Ct. at 469. [Emphasis supplied.]

Earlier, in *Cline v. Kaplan,* 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97 (1944), the Supreme Court said:

"Once it is established that the claim is not colorable nor frivolous, the claimant *has the right* to have the merits of his claim passed on in a plenary suit and not summarily. Of such a claim the bankruptcy court cannot retain further jurisdiction unless the claimant consents to its adjudication in the bankruptcy court." *Id.* at 99, 65 S.Ct. at 156. [Emphasis supplied.]

Here we have a situation distinctly akin to the one involved in *Suhl v. Bumb,* 348 F.2d 869 (CA9 1965), *cert. denied,* 382 U.S. 938, 86 S.Ct. 388, 15 L.Ed.2d 349, where the court said:

"The power of a bankruptcy court to resolve adverse claims concerning the assets of the bankrupt's estate is indeed a power of imposing magnitude. *Since it results in depriving adverse claimants of a plenary suit, we must ever be cautious lest we permit its extension to a situation that should not permit summary disposition." Id.* at 871. [Emphasis supplied.]

The trial before the referee was an extensive one. His findings of fact and conclusions of law cover 18 typewritten legal size pages. He concluded that the trustee was entitled to the title and possession of *Easement A.*

We conclude that the legal principles enunciated in *Harrison* should be applied to this extremely complex legal and factual background. It must be conceded that the appellant District has a substantial right of possession under its servient estate even though *Easement A,* under California law, might eventually be declared valid. The appellee has presented no evidence showing a direct grant of *Easement A* to the bankrupt or its predecessors in interest. The

appellant District, the conceded owner of Lot 168, and the conceded owner of at least a servient estate in alleged *Easement A* has a possessory interest in the property[4] that must be likened to the claim of the adverse claimant in *Harrison.* Here, as in *Harrison,* the appellant District's claim to the property must be deemed substantial. It is not so unsubstantial and obviously insufficient, either in fact or law, as to be plainly without color of merit. It amounts to more than a mere pretense. *Harrison v. Chamberlin, supra,* 271 U.S. at 195, 46 S.Ct. 467.

## CONCLUSION

The referee's findings of fact and conclusions of law that he had jurisdiction to proceed in a summary manner are clearly erroneous.

The judgment of the district court is vacated and the cause is returned for a remand to the bankruptcy court with directions to dismiss the proceeding for want of jurisdiction. If the trustee so desires, he may institute a plenary action in the district court or, in his discretion, await the decision of the California court on the issues presented in the litigation there pending. If a plenary action is started in the district court, the court may consider abstaining from deciding this difficult question of California easement law pending decision of the California court.

---

4. "§ 810. *Owner of servient tenement; possessory action*

    ACTIONS BY OWNER OF SERVIENT TENEMENT. The owner in fee of a servient tenement may maintain an action for the possession of the land, against any one unlawfully possessed thereof, though a servitude exists thereon in favor of the public." Cal.Civ.Code § 810 (West).