In the Matter of LAKE MINNEWASKA MOUNTAIN HOUSES, INC., Debtor.

LAKE MINNEWASKA MOUNTAIN HOUSES, INC., Plaintiff,

v.

Ruth H. SMILEY et al., Defendants.

Bankruptcy No. 76 B 1468.

United States Bankruptcy Court, S. D. New York.

June 3, 1981.

Jules Teitelbaum, New York City, for plaintiff/debtor.

McCabe & Mack, Poughkeepsie, N. Y., for defendants.

## DECISION ON MOTION TO DISMISS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Lake Minnewaska Mountain Houses, Inc., the above captioned debtor, commenced an adversary proceeding to reject certain agreements with the defendants pursuant to the authority of Section 313 of the former Bankruptcy Act, or, in the alternative, for a declaratory judgment that the agreements are void. The defendants then moved to dismiss the complaint on various grounds including: The debtor is barred from rejecting the contracts because it failed to schedule the contracts in its list of executory contracts; the court lacks summary jurisdiction over the defendants and the adversary proceeding is unnecessary and without benefit to the debtor, its estate or the creditors.

The adversary proceeding was originally commenced in the Bankruptcy Court for the Southern District of New York at Poughkeepsie, New York. However, Judge Berk recused himself from presiding over this matter, so, with the consent of the parties, the hearing was referred to the Bankruptcy Court for the Southern District of New York located in White Plains, New York.

On June 24, 1976, Lake Minnewaska filed a petition in the Southern District of New

York under Chapter XI of the former Bankruptcy Act and was continued in possession and operation of its business and property. The plan of arrangement, which was filed on April 24, 1978, was accepted by the requisite majority of creditors in number and amount on January 9, 1979. The plan was found to be feasible and in the best interest of creditors on April 26, 1979.

On April 16, 1980, an order was entered approving a contract between the debtor and the Marriott Corporation for the sale of a portion of the debtor's property. The contract provided that the purchase was subject to the defendants' rights. Notwithstanding the apparent willingness of Marriott Corporation to purchase the property subject to the defendants' rights, the debtor, nevertheless, filed a complaint in December of 1980 to reject the defendants' contractual rights. In response to the defendants' motion to dismiss the debtor's complaint, the debtor purported to amend its Statement of Executory Contracts on March 9, 1981, by listing the defendants' contracts. No application was made to this court for any extension of time for cause shown to file the amended schedule. The defendants' motion to dismiss the complaint had previously been filed with the court on February 23, 1981.

### THE DEFENDANTS' RIGHTS

The defendants are Ruth H. Smiley and her known descendants. In 1955, Ruth Smiley and her late husband, Alfred F. Smiley, sold their stock in a corporation known as George H. Smiley and Son, Inc. to investors who thereafter formed the plaintiff debtor. The Smileys were granted the right, during their lifetime and during the lifetime of the survivor of them, and to their descendants for the period of 99 years following the death of the survivor of them, to occupy and use, at the annual rental of $1.00 for each parcel, five parcels of land referred to in Exhibit # 1, attached to the complaint. Thereafter, as reflected by Exhibit # 1, the Smileys and plaintiff's predecessor, George H. Smiley and Son, Inc., entered into two agreements in February and March of 1958 which revoked the 1955 agreement so that a mortgage could be obtained but repeated the grant of certain specific rights. The Smileys agreed that if their health permitted they would come as guests to the Lake Minnewaska resort for at least part of the summer season of each year so that they would be seen by other guests in and about the properties. Plaintiff's predecessor agreed to provide the Smileys with guest rooms, food and utilities at two specific hotels on the premises as well as a "family table". This right to use the rooms, food and facilities granted to the Smileys and their descendants was subject to the restriction that the Smileys or their descendants would not, "without the written consent of The Company first obtained in each case, either sell, assign, mortgage, pledge, encumber or transfer said lease, underlet or sublet the demised premises or any part thereof or suffer the same to be used for any purpose other than as a private dwelling, nor by anybody other than the tenants and the members of the tenants' family. In the event that tenants shall abandon the demised premises, or any of them, the tenancy, as to the particular property abandoned shall, at the election of The Company, be terminated and all rights hereunder shall cease."

While neither party has questioned the executory nature of the Smiley contracts, it does appear that they are not executory at all, since there is very little for Mrs. Smiley and her descendants to do but show up at the debtor's premises and eat the debtor's food, use its facilities and occupy rooms at the hotel for the *de minimus* cost of $1.00 per year. In the context of the Bankruptcy Act, the courts have adopted Professor Countryman's definition of executory contracts, namely:

> "A contract under which the obligations of both the bankrupt and the other party to the contract are so unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of. the other."

Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460

(1973) See also Countryman, *Executory Contracts in Bankruptcy: Part II*, 58 Minn. L.Rev. 749 (1974); *In re Knutson*, 563 F.2d 916 (8 Cir. 1977); *Jenson v. Continental Financial Corp.*, 591 F.2d 477 (8 Cir. 1979).

█ It might be argued, as the debtor does in the third cause of action, that the Smileys' past performance in developing the resort area in question is not adequate consideration to support the debtor's obligation to afford them rooms, food, utilities and storage when all they have to do is visit the resort and accept the debtor's hospitality. Thus, where one party to a contract has no further substantial obligations to perform, the contract is executed because the other party has received all of the consideration for which he bargained. Thus, in *In re Grayson-Robinson Stores, Inc.*, 321 F.2d 500 (2 Cir. 1963), a guarantor of a lease could not reject the guarantee as an executory contract since there would be no relinquishment of benefits and merely a repudiation of obligations. The instant agreements create a one-way street with the debtor shouldering all of the obligations and admittedly receiving no benefits from Ruth Smiley or her descendants.

█ However, there exists a more cogent reason why the debtor may not reject the Smiley agreements; the debtor belatedly treated them as executory. Bankruptcy Rule 11–11, which applies to this case, directs that a debtor must file with the court schedules of all debts, all property, a statement of affairs "and a statement of his executory contracts". Subsection (b) requires that the schedules and statements may be filed within 15 days after filing the petition and within an additional 30 days upon application. Thereafter, "any further extension may be granted *only for cause shown* and on such notice as the court may direct." (Emphasis added) The debtor never listed the contracts in question until after February 23, 1981, when the defendants moved to dismiss the debtor's complaint which sought to reject these contracts. Instead of seeking leave of the court, for cause shown, the debtor merely filed an *ex parte* amendment to its schedules on March 9, 1981, listing the defendants' contracts.

The debtor relies upon this court's decision in *In re Sequential Information, Inc.*, ¶ 64,401 CCH Bank.L.Rep. (S.D.N.Y.1972) for the proposition that its failure to list the Smiley contracts is not fatal to its right to reject them. It was noted in that case that the debtor could provide for rejection of the contracts in its plan pursuant to Section 357(2) of the former Bankruptcy Act rather than earlier, as permitted under Section 313(1) of the Act. This court further observed that parties to an executory contract were not deprived of their participation in the proceedings because a person injured by the rejection was entitled to the rights of a creditor. However, in this case, the bankruptcy court found the debtor's plan to be in the best interests of creditors and feasible on April 26, 1979, long before the Smiley interests had any notice of the debtor's intention to reject their contracts. They were thus deprived of participation in the hearing with respect to the best interests of creditors and the critical issue as to feasibility of rehabilitation. This is clearly contrary to the spirit of creditor participation. The reason for listing the executory contracts as early as possible is stated in 8 *Collier on Bankruptcy*, ¶ 4.06 at page 394 as follows:

> "The nature of executory contracts is an important factor to be considered in connection with the continued operation of the debtor's business *and with the feasibility of rehabilitation*. The early filing of the statement also enables prompt action by interested parties for the rejection of an executory contract where the facts make rejection desirable." (Emphasis added)

In this case, the debtor has not even as much as "by your leave" requested this court for permission to amend its statement of executory contracts so as to list the defendants, as required by Bankruptcy Rule 11–11(b). Instead, the debtor unilaterally expects to reject the Smiley contracts without having offered the Smileys an opportunity to participate at the feasibility hearing

and without having obtained permission from this court, upon cause shown, to amend the statement of executory contracts. In the circumstances, the debtor is in no position to reject the Smiley contracts. Accordingly, the defendants' motion to dismiss the first two causes of action in the complaint, which seek to reject the Smiley contracts, is granted.

## JURISDICTION

■■■ The second prong to the defendants' motion to dismiss the debtor's complaint relates to the Bankruptcy Court's authority to exercise summary jurisdiction with respect to their rights in the property in question, absent their consent to such jurisdiction. Under the former Bankruptcy Act, there existed a distinction between summary jurisdiction and plenary jurisdiction. The Bankruptcy Court, under the former Bankruptcy Act (which is applicable to this case), lacks authority to exercise summary jurisdiction over a third party who does not consent to such jurisdiction and who claims an interest in property in question that is not colorable. *Cline v. Kaplan,* 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97 (1944); *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940); *Harrison v. Chamberlin,* 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897 (1926); *May v. Henderson,* 268 U.S. 111, 45 S.Ct. 456, 69 L.Ed. 870 (1925); *Taubel-Scott-Kitzmiller Co. v. Fox,* 264 U.S. 426, 43 S.Ct. 250, 67 L.Ed. 480 (1924); *White v. Schloerb,* 178 U.S. 542, 20 S.Ct. 1007, 44 L.Ed. 1183 (1900). Thus, a bona fide lessee of the debtor's property who is in possession of the property on the date of the filing of the bankruptcy petition has a substantial adverse claim to such property so as to deprive the bankruptcy court of summary jurisdiction to adjudicate such a claim. 8 *Collier on Bankruptcy,* ¶ 3.02 at page 158.

■■■ In this case, there is no question that the debtor has title to all of the property in question. Additionally, even though Mrs. Smiley may have actually occupied rooms at one of the hotels on the debtor's premises at the time the Chapter XI petition was filed, neither she nor her descendants who have a remainder interest upon her death can be regarded as factually in substantial possession of the debtor's property so as to oust this court from exercising its summary jurisdiction with respect to such property. Pursuant to Section 311 of the former Bankruptcy Act, the Bankruptcy Court where the Chapter XI petition was filed has "exclusive jurisdiction of the debtor and his property, wherever located."

The agreement under which Mrs. Smiley and her descendants are given a right to occupy space on the debtor's property does not mean that the debtor does not have possession of such premises. The debtor must maintain the rooms in question and pay for the utilities, whether or not the Smileys are in occupancy. These rooms are in buildings controlled and operated by the debtor all year and are in the actual physical custody of the debtor. In the circumstances of this case, it is clear that the debtor has both title and physical dominion over the property in question sufficient to support the court's exercise of summary jurisdiction with respect to the property. Therefore, the defendants' motion addressed to the jurisdictional authority of this court to determine rights relating to such property is denied.

## DISCRETIONARY AUTHORITY TO DISMISS

The third basis for defendants' motion to dismiss the complaint is bottomed on the argument that this court should decline to determine a matter that is claimed to be unnecessary and without benefit to the debtor, its estate or its creditors.

The defendants observe that although the Marriott Corporation has contracted to purchase certain parcels of the debtor, subject to the Smileys' rights, Marriott has agreed to reimburse the debtor for costs and expenses incurred to eliminate their interests. Thus, while the voice is the voice of the debtor, the hands behind the motion are the hands of Marriott. The defendants complain that the troublesome aspect of this situation is that it appears that the debtor

is merely doing Marriott's bidding without showing that the interests of the estate or its creditors will be in any way enhanced by a continuation of this time-consuming litigation. There is much merit to this point, especially since the court should not consider any counsel time spent needlessly when reviewing requests for allowances. Since the debtor already has a buyer under contract for the property which was sold subject to the Smileys' rights, it is difficult to see how the debtor's success in this litigation will benefit this estate. However, this point cannot be determined on a motion to dismiss the debtor's complaint. The defendant's motion, addressed to this court's discretion, is therefore denied without prejudice to renewal at a time when the facts may be more fully developed.

Submit order on notice in accordance with the foregoing rulings.