In re CHASE MANHATTAN MORTGAGE AND REALTY TRUST, Debtor.

Thomas J. HARTIGAN, as Trustee, under that certain trust agreement dated as of May 1, 1980, Plaintiff,

v.

BLAESER DEVELOPMENT CORPORATION and Riverbend East Development, Inc., Defendants.

Thomas J. HARTIGAN, as Trustee, under that certain trust agreement dated as of May 1, 1980, Plaintiff and Third-Party Plaintiff,

v.

TRITON GROUP, Third-Party Defendant.

Bankruptcy No. 79-B-278.

United States Bankruptcy Court, S. D. New York.

June 30, 1981.

Zalkin, Rodin & Goodman, New York City, for Thomas J. Hartigan; Andrew Gottfried, New York City, of counsel.

Gordon, Hurwitz, Butowski, Baker, Weitzen & Shalov, New York City, for defendants; Paul Wexler, New York City, of counsel.

## OPINION

ROY BABITT, Bankruptcy Judge:

On February 22, 1979, Chase Manhattan Mortgage and Realty Trust (CMART or debtor) filed its petition for the relief afforded by Chapter XI of the now repealed provisions of the 1898 Bankruptcy Act (Act), Sections 301 et seq., 11 U.S.C. (1976 ed.) § 701 et seq.[1] In the ordinary course of the unfolding of this Chapter XI estate, this court confirmed the debtor's third amended plan on May 23, 1980.[2] The adversary proceeding now before the court, however, was commenced one day before the entry of the order of confirmation, when, upon CMART's consent, this court authorized the commencement of an action by the unofficial creditors' committee of bank creditors in the name of the debtor. See Rule 11–61, 415 U.S. 1067, 94 S.Ct. 3258, 39 L.Ed.2d lii, which makes applicable to this type of proceeding the Part VII Bankruptcy Rules. Rules 701 et seq., 411 U.S. 1068, 93 S.Ct. 3147, 37 L.Ed.2d lxvi et seq.

This subject matter of the first cause of action in the suit thus started is 20 acres of undeveloped land in Florida (Florida property) relative to a proposed condominium project. On the date of the filing of the complaint, Rule 703, title to this Florida property and possession were in CMART. Also involved is a dispute over the management of a contiguous existing condominium project.

The specifics are these: on August 25, 1978, CMART and Riverbend East Development, Inc. (Riverbend)[3] entered into a written agreement of sale (sale agreement) whereby Riverbend agreed to purchase 20 acres of land from CMART for $640,000. Paragraph 11 of the agreement made this sale contingent upon Riverbend's obtaining the appropriate government approval for a proposed condominium project on or before January 31, 1978, a time frame extended in writing until October 31, 1979. The required government approval had not been obtained by that date, nor has there been such approval since. Notwithstanding, Riverbend continued to assert rights it said subsisted under this agreement, thereby burdening the property with a cloud on title.

Plaintiff's second claim involves a letter agreement (letter agreement), dated January 19, 1979, between CMART and Blaeser Development Corporation (Blaeser), by which CMART appointed Blaeser as its exclusive agent to sell seven assets owned by CMART in the period of six months from the date of that letter agreement.

Plaintiffs asked for a declaratory judgment that the sale agreement had been terminated as a result of failure to meet certain preconditions and that the letter agreement expired by its own terms.

After initiation of this suit, the debtor's plan was confirmed, an event crucial to this dispute, for, pursuant to Article III(D) of the plan, CMART transferred all its right, title and interest in the agreement and in the letter agreement to a liquidating trust for the benefit of bank creditors. Simply stated, CMART relinquished to a third party, a stranger to this Chapter XI case, all its interest in those assets forming the subject matter of this adversary proceeding. To conform to this change, this court, on June 17, 1980, granted a motion made by CMART and Thomas Hartigan, trustee under a trust agreement, dated May 1, 1980, to substitute the latter for CMART as plaintiff herein. Hartigan then served an amended complaint. Defendants answered the amended complaint, denied the main allegations, asserted a counterclaim in *quantum meruit* and raised affirmative de-

1. Although the 1978 Code was enacted on November 6, 1978 and became effective on October 1, 1979 (Section 402(a) of Title IV), those cases commenced under the 1898 Act (repealed by Section 401(a)) are conducted and determined by that law. Section 403(a) of Title IV of the 1978 bankruptcy reform legislation, 92 Stat. 2549, 2683.

2. This case was originally assigned to Bankruptcy Judge Stanley T. Lesser, and it came to me upon his resignation.

3. Riverbend is a wholly owned subsidiary of Blaeser Development Corporation, a named defendant in this action.

fenses, including lack of subject matter jurisdiction, oral waiver and estoppel. Hartigan replied, denied the allegations of the counterclaim, and crossclaimed against CMART (now known as The Triton Group) which denies all liability.

Defendant then brought on the present motion for an order, pursuant to Rules 712(b), 411 U.S. 1074, 93 S.Ct. 3151, 37 L.Ed.2d lxviii (1973), and 915, 411 U.S. 1098, 93 S.Ct. 3170, 37 L.Ed.2d lxxix (1973), of the Bankruptcy Rules, dismissing this adversary proceeding for want of subject matter jurisdiction.

The issue thus raised by this motion is whether a bankruptcy court which undeniably possesses subject matter jurisdiction over the controversy raised in an adversary proceeding at its commencement may lose this power upon the assignment of title to the subject property and contract rights pursuant to the terms of the debtor's later confirmed Chapter XI plan. The court starts with a brief revisit to the fundamentals of bankruptcy jurisdiction under the 1898 Act.

Bankruptcy jurisdiction under the Act was a fluid concept, not capable of precise definition.[4] It was clear that the bankruptcy court was empowered with only limited jurisdiction and the power it exercised must have been found expressly or implicitly in the provisions of the Bankruptcy Act. *O'Dell v. United States*, 326 F.2d 451, 455 (10th Cir. 1964).

This power was not coextensive with the powers of a United States District Court endowed with a more robust general jurisdiction.

"The power conferred upon courts of bankruptcy by the Bankruptcy Act does not make them courts of general jurisdiction to hear and determine controversies

not properly part of a bankruptcy proceeding".

*Associated Electronic Supply Co. of Omaha v. C.B.S. Electronic Sales Corp.*, 288 F.2d 683 (8th Cir. 1961). And, although Congress had not rigidly delineated the boundaries of bankruptcy jurisdiction, a course leading to many troublesome and difficult questions as to the length and breadth of this power, the facts of the instant controversy surely fall within the more generally accepted principles fixing the reach of the bankruptcy court's jurisdiction. See, *In re Eastern Freightways, Inc.; Gluck v. Seaboard Surety*, 577 F.2d 175 (2d Cir. 1978), for an example of the difficulties inherent in determining that jurisdiction. Section 311 of the Act, 11 U.S.C. (1976 ed.) § 711,[5] endowed the Bankruptcy Court in a Chapter XI case with subject matter jurisdiction over the *debtor and its property*, wherever located. Basically, jurisdiction was said to depend upon the Chapter XI debtor's title or possession. *Slenderella Systems of Berkeley, Inc. v. Pacific Telephone & Telegraph Co.*, 286 F.2d 488, 491 (2d Cir. 1960).

This controversy simply does not satisfy these criteria, as it has become a dispute between strangers to this Chapter XI debtor's bankruptcy. It seems clear that neither the debtor nor its property are involved. Extensive discussion is not needed for, on the facts, this dispute is within the general rule that a bankruptcy court lacks subject matter jurisdiction over a controversy solely and exclusively between third parties not involving, directly or indirectly, the debtor or its property. *First State Bank and Trust Company of Guthrie, Oklahoma v. Sand Springs State Bank of Sand Springs, Oklahoma*, 528 F.2d 350 (10th Cir. 1976).

At this juncture, the dispute may be characterized as a private controversy not relat-

---

**4.** The 1978 Bankruptcy Reform Act now confers pervasive jurisdiction on the bankruptcy courts, 28 U.S.C. § 1471 *et seq.*, thereby eliminating the difficulties experienced in determining the concepts of "possession, title or consent" as the bases of jurisdiction. H.Rep. No. 95–595, 95th Cong., 1st Sess. 43–48 (1977); S.Rep. No. 95–598, 95th Cong., 2d Sess. 17

(1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

**5.** "Where not inconsistent with the provisions of this chapter, the court in which the petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and his property, wherever located".

ing to matters pertaining to CMART's Chapter XI case. Plaintiff is the assignee of CMART's interest in two contracts relating to a planned condominium project in Florida. Pursuant to CMART's confirmed plan, title to the Florida property was transferred from CMART to plaintiff. To be sure, CMART at one time did have an interest in the subject matter of this adversary proceeding. But that interest was relinquished in accordance with the provisions of the plan. Now, therefore, the subject matter of this adversary proceeding is neither an asset of this estate, nor does resolution of the dispute have any impact on the tidying up of loose ends which might affect the administration of the Chapter XI case. There can be no dispute that both plaintiff and defendant are strangers to this proceeding and this court without the power to determine a controversy between third parties not involving property of the debtor.

Nor do these facts provide the only exception to this general rule, i. e., unless the dispute is resolved, this court could not complete its administrative duties. *In re Shirley Duke Associates*, 611 F.2d 15 (2d Cir. 1979); *First State Bank and Trust Co., supra; O'Dell v. United States, supra.* Plaintiff does not even suggest that this court must rule lest it fail in its duty to oversee the final administrative detail in this Chapter XI case.

This court acknowledges that plaintiff is attempting to construct a theory of jurisdiction based on cases relating to substitution of parties. See Rule 725, 411 U.S. 1078, 93 S.Ct. 3155, 37 L.Ed.2d lxx (1973), which makes applicable F.R.Civ.P. 25, and general principles of federal jurisdiction. This theory and the law cited for it miss the mark as they deal with courts whose jurisdiction is and remain more robust than that of this court. See *Smith v. Sperling*, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957), where the Court determined that diversity jurisdiction was not lost by a federal court upon the death of the plaintiff and the substitution of an administrator whose citizenship was the same as defendant's.

Plaintiff, by analogy, argues that when this adversary proceeding was commenced, CMART was in possession of and held title to the property at issue, either one being a sufficient jurisdictional touchstone. This, the argument runs, is the controlling factor for, under general principles of federal law, jurisdiction once obtained is not lost. Without taking a position as to the correctness of this rule in another context, there is simply no utility to it in the scheme of accepted limitations on a bankruptcy court's jurisdiction. There is no reason for this court to determine a controversy in no way related to CMART's Chapter XI case since plainly this court's power to close the Chapter XI book can in no way be benefitted by involving itself in a controversy among strangers.

The court rejects the argument that once its jurisdiction attached, it retains that jurisdiction in the face of very narrowly circumscribed contours which, above all, remind us that those contours depend basically on the debtor or its property. In *Peter Pan Seafoods, Inc. v. M/V Polar Viking*, 446 F.Supp. 1283 (W.D.Wash.1977), Peter Pan had brought an action in the district court to recover on maritime liens for services rendered to the Polar Viking. Before the commencement of this action, Northland, who had possession of that vessel by subcharter, filed its Chapter XI petition. During the course of the Chapter XI process, the bankruptcy court determined it had no interest in the vessel and ordered it returned to Red Circle. Red Circle then moved in the district court to dismiss Peter Pan's action on the ground that the bankruptcy court had exclusive jurisdiction. The district court denied the motion, holding that when the bankruptcy court ordered the return of the Viking, the exclusive jurisdiction of that court had terminated.

Plaintiff also takes the position that under the facts here, defendants may be found to have consented to the jurisdiction of this court. Plaintiff relies on *In re Co-Build Companies, Inc.*, 5 B.C.D. 200 (E.D.Pa. 1978), which, in turn, relied upon *In re California Eastern Airways*, 95 F.Supp. 348

(D.Del.1951), for the proposition that a party who contracts with a debtor in possession thereby submits to the jurisdiction of the bankruptcy court. It is plaintiff's view that defendant, by entering into written extensions of the agreement with CMART, as debtor in possession, submitted to this court's power. But these cases are not in point as the lawsuits there involved either the debtor, the trustee or property of the estate. This adversary proceeding, on the other hand, is distinguishable as this confirmed Chapter XI debtor no longer has an interest in the real property or contracts at issue for they were transferred to a stranger to the Chapter XI case. These extensions are too slim a reed to support jurisdiction by ambush where the agreements to which they spoke have been withdrawn from any interest of the debtor.

■ Furthermore, as this court is now bereft of jurisdiction over the subject of this suit, it is hornbook law that consent cannot confer this subject matter jurisdiction.

"It is an axiom that consent cannot provide jurisdiction. Only where Congress has conferred power on the court to hear and determine a particular kind of controversy, can adverse parties consent to exercise of judicial authority over persons or rights. But it has been seen here, no mandate has been given by law to settle this dispute between third parties as to property in which bankrupt has neither right, title, interest nor possession. Consent is of no avail".

*In re Paddock of California*, 226 F.Supp. 43 (S.D.Cal.1964).

■ Finally, the facts here suggest there is another string to this court's bow. See *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 44, 100 S.Ct. 2009, 2019, 64 L.Ed.2d 702 (1980). The questions for resolution here involve both Florida real estate and the application of Florida real estate law. That state's courts are best qualified to decide such matters. This court, even if it had jurisdiction based on property, should only sparingly accept questions which may be equally well resolved in purely local courts. See *First State Bank and Trust Co., supra* at 354, *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940).

Accordingly, the motion to dismiss is granted. As the record does not disclose the availability of the alternative given by Rule 915(b), 411 U.S. 1098, 93 S.Ct. 3170, 37 L.Ed.2d lxxix, the complaint is dismissed without prejudice to commencement in the appropriate court, state or federal.

Submit order.