In re LAKE MINNEWASKA MOUN-TAIN HOUSES, INC., Debtor.

LAKE MINNEWASKA MOUNTAIN HOUSES, INC.,
Plaintiff/Appellant,

v.

Ruth H. SMILEY, et al.,
Defendants/Cross-Appellants.

Nos. 81 Civ. 5542 (JES), 81 Civ. 5543 (JES).

United States District Court,
S.D. New York.

Aug. 3, 1984.

Jules Teitelbaum, P.C., New York City, for plaintiff/appellant; Wayne Greenwald, New York City, of counsel.

McCabe & Mack, Poughkeepsie, N.Y., for defendants/appellants; Richard A. Mitchell, David L. Posner, Poughkeepsie, N.Y., of counsel.

## OPINION & ORDER

SPRIZZO, District Judge:

Appellant Lake Minnewaska, debtor in the bankruptcy proceeding below, com-

menced an adversary proceeding in the bankruptcy court against cross-appellants Ruth H. Smiley and her descendants (hereinafter collectively referred to as "the Smiley interests"). In its first and second causes of action, Lake Minnewaska sought to disaffirm, as executory, certain contracts with Ruth H. Smiley and her late husband Alfred F. Smiley ("the Smileys") pursuant to which Lake Minnewaska's predecessor-in-interest conveyed various property interests to the Smileys and their descendants.[1]

In its third through seventh causes of action, Lake Minnewaska sought to have those agreements ("the Smiley Agreements") declared violative of several New York state property laws. Bankruptcy Judge Schwartzberg granted defendants' motion to dismiss Lake Minnewaska's first and second causes of action and denied their motion to dismiss the remainder of the complaint. *In re Lake Minnewaska Mountain Houses, Inc.*, 11 B.R. 455 (Bankr.S.D.N.Y.1981). Lake Minnewaska appeals from that part of his order which dismissed counts one and two; the Smiley interests cross-appeal from his decision denying their motion to dismiss counts three through seven.

## THE APPEAL BY LAKE MINNEWASKA (81 Civ. 5542)

### Relevant Facts

In June 1976, Lake Minnewaska filed a petition under Chapter XI of the former Bankruptcy Act, 11 U.S.C. §§ 701–799 (1976).[2] It filed a statement of its executory contracts in September 1976, as required by section 324 of the Act. 11 U.S.C. § 724. The Smiley Agreements were not included on Lake Minnewaska's original statement. In December 1980, over four years later, Lake Minnewaska brought an adversary proceeding in the bankruptcy court seeking, *inter alia*, to reject those agreements as burdensome executory contracts. At the time that action was commenced, the Smiley agreements had not been included in the statement of executory contracts; only after the Smiley interests moved to dismiss Lake Minnewaska's complaint did the debtor purport to amend its statement to include them.[3]

The bankruptcy court held that, under the circumstances of this case, Lake Minnewaska was "in no position to reject the Smiley contracts" and granted defendants' motion to dismiss the first and second causes of action. 11 B.R. at 459. In reaching that conclusion, the court relied on Bankruptcy Rule 11–11, which provides in part:

> *Schedules, Statement of Affairs, and Statement of Executory Contracts*
>
> *(a) Schedules and Statements required*
>
> The debtor shall file with the court schedules of all his debts and all his property, a statement of his affairs, and a statement of his executory contracts . . .
>
> *(b) Time Limits*
>
> Except as otherwise provided herein, the schedules and statements, if not pre-

---

1. The property at issue was originally owned by the debtor's predecessor-in-interest, George H. Smiley & Son, Inc., which in turn was owned by the Smileys. In 1955, Mr. and Mrs. Smiley sold their stock in George H. Smiley & Son, Inc. to Kenneth B. Phillips, Sr. and his wife, Lucille E. Phillips ("the Phillips"). The Phillips later formed Lake Minnewaska. That agreement conveyed to the Smileys and their descendants extensive rights to use the property, as well as other specified rights. In 1958, the Smileys and George H. Smiley & Son, Inc. entered into two more agreements ("the Smiley Agreements"). The first, dated February 19, 1958, revoked the 1955 agreement so that a mortgage on the property could be obtained; the second, dated March 7, 1958, was virtually identical to the 1955 agreement and reinstated the terms that had been revoked.

2. Although the Bankruptcy Act of 1898 has since been repealed, cases, such as this one, commenced thereunder continue to be governed by that Act. *See Guardian Mortgage Investors v. Unofficial Noteholders-Debentureholders Creditors Committee*, 607 F.2d 1020, 1024 n. 6 (2d Cir.1979); *In re Chase Manhattan Mortgage & Realty Trust*, 11 B.R. 982, 983 n. 1 (Bankr.S.D.N.Y.1981).

3. The defendants moved to dismiss on February 23, 1983; Lake Minnewaska amended its statement of executory contracts on March 9, 1981.

viously filed in a pending bankruptcy or Chapter XII case, shall be filed with the petition. A petition shall nevertheless be accepted by the clerk if accompanied by a list of all the debtor's creditors and their addresses, and the schedules and statements may be filed within 15 days thereafter in such a case. On application, the court may grant up to 30 additional days for the filing of schedules and the statements; *any further extension may be granted only for cause shown and on such notice as the court may direct.* (Emphasis added.)

The bankruptcy court held that Lake Minnewaska had violated Rule 11–11 because it did not seek leave of court, for cause shown, to amend its statement, but instead merely filed an *ex parte* amendment listing the Smiley Agreements. 11 B.R. at 458. Judge Schwartzberg also found that Lake Minnewaska's delay in including those agreements in its statement of executory contracts had deprived the Smiley interests of an opportunity to participate in the reorganization proceedings, and noted that "the bankruptcy court found the debtor's plan to be in the best interests of creditors and feasible on April 26, 1979, long before the Smiley interests had any notice of the debtor's intention to reject their contracts." *Id.*

*Discussion*

■ The bankruptcy court's reliance on Rule 11–11 was misplaced. The language of that rule suggests that Rule 11–11(b) is concerned with the times within which the *original* required schedules and statements must be filed, and not with subsequent amendments thereto. Although the Court has found no case squarely holding that Rule 11–11(b) does not apply to amendments, those cases that discuss amendments do so in the context of the more permissive standards of Bankruptcy Rule 110.

■ Rule 110 provides that "A voluntary petition, schedule, or statement of affairs may be amended *as a matter of course at*

*any time before the case is closed ...."* (Emphasis added.)[4] This Court therefore concludes that the provisions of Rule 110 govern amendments to statements of executory contracts and not those of Rule 11–11.

Lake Minnewaska argues that, since the plan of arrangement had not been confirmed and the case was not closed at the time it amended its statement of executory contracts, its amendment was proper under Rule 110 and the bankruptcy court therefore erred in dismissing its first and second claims.

The Smiley interests contend that, despite his application of the wrong rule, the bankruptcy judge's dismissal was nonetheless proper. They argue that, even under the permissive standards of Rule 110, a statement of executory contracts may not be amended where the amendment would cause prejudice to creditors or third parties. They urge this Court to accept the bankruptcy judge's statement that they were deprived of participation in the Chapter XI proceedings by Lake Minnewaska's delay in listing the Smiley Agreements as a finding of *prejudice,* and assert that such a finding precludes amendment of the statement and rejection of the contracts.

Cases interpreting Rule 110 do not uniformly support the construction urged by either party. Some have held that a court may reject amendments where there has been a showing of the debtor's bad faith or of prejudice to creditors or third parties. *See Matter of Doan,* 672 F.2d 831, 833 (11th Cir.1982); *In re Alesia,* 28 B.R. 46, 50–51 (Bankr.N.D.Ill.1982); *In re Shaffer,* 8 B.R. 497, 502 (Bankr.E.D.N.Y.1981). Others, however, have held that courts do not have such discretion and must permit all amendments filed by the debtor prior to the close of a case. *See Matter of Gershenbaum,* 598 F.2d 779, 781 (3d Cir.1979); *In re Jordan,* 21 B.R. 318, 318–20 (Bankr. E.D.N.Y.1982); *cf. In re Schreibman,* 1 B.C.D. 112, 113 (Bankr.S.D.N.Y.1974). In

---

**4.** Although Rule 110 does not itself refer to statements of executory contracts (since it is a bankruptcy rule and not a Chapter XI rule), Rule 11–12 incorporates it in Chapter XI cases.

this case, the bankruptcy court was never afforded the opportunity to address that issue.

On the record before this Court and from the statements of counsel at oral argument, it appears that Lake Minnewaska failed to rely on Rule 110 in opposing defendants' motion to dismiss in the bankruptcy court—despite the fact that the Smiley interests had cited the more restrictive provisions of Rule 11–11 and argued that Lake Minnewaska was required to seek leave of court, for cause shown, to amend its statement of executory contracts. *See* Affidavit of Jules Teitelbaum, Esq. dated March 3, 1981 para. 4(d). Moreover, after the bankruptcy judge issued an opinion in which he relied on the requirements of Rule 11–11 in partially granting defendants' motion to dismiss, Lake Minnewaska never sought leave to reargue that aspect of his decision. Instead, it filed a notice of appeal.

■ This Court will not decide an issue not properly raised or argued in the bankruptcy court. The action is therefore remanded to the bankruptcy court to determine as a matter of law whether it has discretion under Rule 110 to reject a purported amendment to a statement of executory contracts where the amendment would result in prejudice. If the bankruptcy court determines that prejudice is a proper factor to be considered under Rule 110, then it is directed to make factual findings with respect to that issue.

## THE CROSS–APPEAL BY THE SMILEY INTERESTS (81 Civ. 5543)

### *Relevant Facts*

The Smiley Agreements conveyed to the Smileys and their descendants substantial rights to the use, occupation, and enjoyment of five specifically enumerated parcels of property.[5] Those rights were granted to the Smileys during their lifetime and to their descendants. for a period of 99 years following the death of the survivor of them.[6] The March 7, 1958 agreement also provided, *inter alia:* (1) that the Smileys, during their lifetimes, would be provided at no cost with all privileges that they had had in the past and had at the time the agreement was executed, including certain "guest accommodations" and "hotel privileges," para. 2(a); (2) that the Smileys, their descendants, and their guests would have eating privileges at their "family table" in the hotel dining room, para. 2(b); (3) that the Smileys would have the exclusive right to occupy and use all closets, rooms, and areas on the premises of the two hotels then used by them and that the contents of those rooms and closets as they then existed would be the exclusive property of the Smileys and not of Lake Minnewaska, para. 2(c); (4) that the Smileys would have the right to estovers, that is, the right to take timber, gravel, stone, and other natural resources for use "in connection with the real property of [Lake Minnewaska] which they are given the right to use and occupy for their lifetime[,]" para. 2(d); and (5) that the Smileys and their descendants, while "owners of the leasehold or other estates" under the agreement, would at all times "have the right to enter upon and have full access to all parts of the approximately 10,000 acres of land, the lakes, roads, paths, buildings and other improvements known as the Lake Minnewaska resort[,]" para. 2(e).

In the bankruptcy court, Lake Minnewaska sought a declaration that the rights of the Smiley interests in the property violate

---

5. Those parcels comprise three parcels of land on Lake Minnewaska and two on Awosting Lake. One of the Lake Minnewaska parcels ("Parcel B") includes the portion of the "Wayside Cottage" occupied by Doris Smiley Payne (the Smileys' daughter) at the time of the agreement and the portion of "Wildmere Cottage" occupied by the Smileys at the time of the agreement. The Awosting Lake parcels are not involved in this litigation; in 1970, Lake Minnewaska sold 7,000 acres of land, including those parcels, to the State of New York.

6. Upon the death of the survivor of the Smileys, the agreements require the descendants to pay an annual rental of $1.00 for each parcel. The agreements do not, however, require Mr. and Mrs. Smiley themselves to pay rent during their lifetimes.

various New York property laws and are therefore void.[7] Defendants moved to dismiss those claims on the grounds that: (1) the bankruptcy court lacked summary jurisdiction to adjudicate them; and (2) assuming *arguendo* that summary jurisdiction existed, the court should abstain from exercising that jurisdiction as a matter of judicial discretion because the claims raised involve complex questions of New York property law which should be resolved by New York state courts.

The bankruptcy court held that it had summary jurisdiction to adjudicate Lake Minnewaska's state law claims and accordingly denied that aspect of defendants' motion to dismiss. The court found that:

> [E]ven though Mrs. Smiley may have actually occupied rooms at one of the hotels on the debtor's premises at the time the Chapter XI petition was filed, neither she nor her descendants who have a remainder interest upon her death can be regarded as factually in substantial possession of the debtor's property so as to oust this court from exercising its summary jurisdiction with respect to such property.

11 B.R. at 459.[8]

*Discussion*

■ Section 311 of the Bankruptcy Act, 11 U.S.C. § 711, provides the bankruptcy court with "exclusive jurisdiction over the debtor and his property, wherever located." In a chapter XI case, the bankruptcy court has summary jurisdiction to adjudicate claims relating to a debtor's property where the debtor has actual or constructive possession of the property *or* has title to the property. *See Slenderella Systems of Berkeley, Inc. v. Pacific Telephone & Telegraph Co.,* 286 F.2d 488, 489–90 (2d Cir.1961); *In re Chase Manhattan Mortgage and Realty Trust,* 11 B.R. 982, 984 (Bankr.S.D.N.Y.1981); *see also In re Stockman Development Co.,* 447 F.2d 387, 389–91 (9th Cir.1971), *cert. denied,* 405 U.S. 923, 92 S.Ct. 962, 30 L.Ed.2d 794 (1972); *In re Copeland,* 391 F.Supp. 134, 138–40 (D.Del.1975), *aff'd in part, vacated in part,* 531 F.2d 1195 (3d Cir.1976); 8 Collier on Bankruptcy ¶ 3.02 (14th ed. 1975). Thus, as the Second Circuit has stated:

> Jurisdiction of the Bankruptcy Court in a Chapter XI proceeding depends upon whether the rights sought to be enforced concern property of the debtor within the meaning of § 311 of the Bankruptcy Act, 11 U.S.C.A. § 711.... Although the debtor's undisputed title to property not in his possession would be enough under the language of Section 311 to authorize the court to act summarily, the court does not acquire summary jurisdiction if the property does not belong to the debtor and is not in his possession, or if the title to property not in his possession is disputed by a substantial adverse claim.

*Slenderella, supra,* 286 F.2d at 489–90 (footnote omitted).[9]

■ Where an adverse claim is asserted with respect to property not in the debt-

---

**7.** Lake Minnewaska contended that the Smiley Agreements: (1) violate the rule against perpetuities; (2) are unenforceable under the statute of frauds because the future tenants are not named with sufficient detail; (3) are void for inadequacy of consideration since the contractual obligations of the Smileys under the agreements are not amenable to court-ordered specific performance; and (4) gave the Smileys mere "revocable licenses," which Lake Minnewaska revoked by commencing this adversary proceeding. Lake Minnewaska also claimed that the remainder interest of the Smileys' descendants is void since it does not follow a *bona fide* estate for years in Mr. and Mrs. Smiley.

**8.** In its opinion, the bankruptcy court did not address defendants' additional argument that it should, as a matter of discretion, abstain from deciding Lake Minnewaska's state law claims.

**9.** The scope of the bankruptcy court's summary jurisdiction under § 311 is thus broader than in an ordinary bankruptcy case—where summary jurisdiction may not be predicated solely on the debtor's ownership of the property. *See In re Stockman Development Co.,* 447 F.2d 387, 389–91 (9th Cir.1971), *cert. denied,* 405 U.S. 923, 92 S.Ct. 962, 30 L.Ed.2d 794 (1972); *Wikle v. Country Life Insurance Co.,* 423 F.2d 151, 153 (9th Cir.1970); *In re Copeland,* 391 F.Supp. 134, 138–39 (D.Del.1975); *Matter of Vintero Corp.,* 1 B.R. 543, 545 n. 9 (Bankr.S.D.N.Y.1979); 8 Collier on Bankruptcy ¶¶ 3.01[1], 3.02 (14th ed. 1975).

or's possession, the court should examine it to ascertain whether it is "real and substantial or merely colorable." *Harrison v. Chamberlin,* 271 U.S. 191, 194, 46 S.Ct. 467, 468, 70 L.Ed. 897 (1926). A merely colorable adverse claim may be adjudicated in a summary proceeding; a real and substantial claim may not be. *Id.; see Cline v. Kaplan,* 323 U.S. 97, 98–99, 65 S.Ct. 155, 156, 89 L.Ed. 97 (1944).[10]

The bankruptcy court concluded that the Smiley interests did not assert adverse rights of possession or title with respect to the property sufficient to defeat the court's exercise of summary jurisdiction. *See* 11 B.R. at 459. This Court disagrees with that conclusion.

Turning first to the issue of possession, the Court finds that the Smiley interests asserted a substantial adverse claim of possession. The challenged agreements gave the Smileys and their descendants the exclusive right to use and occupy five enumerated parcels of property. It is therefore apparent that Lake Minnewaska was not in possession of those parcels at the time the chapter XI petition was filed. Ruth H. Smiley was actually residing in her portion of Wildmere Cottage, located on Parcel B, on that date and had an exclusive right of possession in the five parcels.[11] Furthermore, the agreements also gave her and her descendants unlimited access to the entire Lake Minnewaska resort, extensive privileges to utilize resort facilities, and the right to exploit the property's natural resources.

■ In sum, the Smiley interests had substantial adverse possessory rights in the entire tract of property, and Mrs. Smiley was in exclusive possession of the five enumerated parcels on the date the chapter XI petition was filed. The Court therefore concludes that the debtor, Lake Minnewaska, did not have actual or constructive possession of the property sufficient to confer summary jurisdiction over the state law claims. *Cf. Bel Marin Keys Community Services District v. Bel-Marin Enterprises, Inc.,* 582 F.2d 477, 482 (9th Cir.1978), *cert. denied,* 440 U.S. 914, 99 S.Ct. 1230, 59 L.Ed.2d 464 (1979).[12]

■ This Court's conclusion that Lake Minnewaska did not have sufficient possession of the property to confer summary

---

**10.** A claim is merely colorable if "the preliminary inquiry shows that it is so unsubstantial and obviously insufficient, either in fact or law, as to be plainly without color of merit, and a mere pretense." *Harrison v. Chamberlin,* 271 U.S. at 195, 46 S.Ct. at 469. It is substantial "when the claimant's contention 'discloses a contested matter of right, involving some doubt and reasonable room for controversy.'" *Id.* (citing *Board of Education v. Leary,* 236 F. 521, 525 (8th Cir.1916)).

**11.** The bankruptcy court's conclusion that Mrs. Smiley merely "occupied rooms at one of the hotels" when the chapter XI petition was filed was clearly erroneous. On that date, she was in exclusive possession of her portion of Wildmere Cottage—a large two family home entirely distinct from the debtor's hotel buildings. Mr. and Mrs. Phillips live in the other half of the house, but only the Smiley's portion is situated on Parcel B; the boundary line of that parcel runs along the common wall dividing the two portions of the house.

The Smileys had lived in their half of Wildmere Cottage for many years prior to selling the Lake Minnewaska property in 1955. Thereafter, they lived there from May to October of each year.

After Mr. Smiley's death in 1975, Mrs. Smiley continued to seasonably occupy the premises until she suffered a stroke in 1978. Since that time, her children and grandchildren have used and occupied the property. At no time, do the Phillips appear to have occupied the Smileys' portion of the house. Thus, it is clear that the Smiley interests have continuously exercised their right to exclusive possession of the premises.

**12.** In its brief, Lake Minnewaska takes great pains to distinguish Mrs. Smiley's claim to the property from any claim that may be asserted by her descendents. Lake Minnewaska relies on the fact that the descendants are not entitled to possession of the five parcels until after Mrs. Smiley's death and therefore have no present possessory right. That distinction, however, is irrelevant to the issue of jurisdiction.

Summary jurisdiction is jurisdiction over the debtor's property. The bankruptcy court does not obtain that jurisdiction unless the *debtor* has possession of or title in the property (or unless the adverse party consents). When the property is in the possession of *any* party with a substantial adverse claim of title, summary jurisdiction is defeated and *no* claims with respect to that property may be adjudicated summarily.

jurisdiction, however, does not necessarily divest the bankruptcy court of that jurisdiction. As noted above, *supra* at 8–9, in a chapter XI case, summary jurisdiction exists even over property not in the possession of the debtor where no substantial adverse claim is asserted *as to title.* *Slenderella Systems of Berkeley, Inc. v. Pacific Telephone & Telegraph Co.,* 286 F.2d 488, 489–90 (2d Cir.1961).[13] Thus, title in Lake Minnewaska would itself be a sufficient predicate for the exercise of summary jurisdiction if the Smiley interests' claim either does not relate to title or is not substantial.

██ However, the adverse claim asserted by the Smiley interests does relate to title. The Smiley interests contend that the agreements gave Mr. and Mrs. Smiley a life estate in the five enumerated parcels of property and that, under New York law, that life estate conveyed title to that property. Brief of Defendants/Cross-Appellants at 18–20.

██ Lake Minnewaska, as the debtor, has the burden to demonstrate that summary jurisdiction exists, *see Wikle v. Country Life Insurance Co.,* 423 F.2d 151, 153 (9th Cir.1970), and has cited no authority to show that Mrs. Smiley's claim of title is insubstantial or "merely colorable." Indeed, the pertinent authorities suggest that the Smiley interests are at least arguably correct. *See* 35 N.Y.Jur. *Life Estates, Remainders, Etc.* § 1 (1964); W. Walsh, *Law of Property* § 95, at 154 (2d ed. 1927); *see also* 3 *Warren's Weed N.Y. Real Prop.,* Life Estates, § 1.01 (4th ed. 1979); 1 J. Rasch, *Real Property Law and Practice* § 102, at 77 (1962). Moreover, the contracts over which Lake Minnewaska con-tends the bankruptcy court had summary jurisdiction encompassed the five parcels in which Mrs. Smiley has a substantial claim of title, and many of Lake Minnewaska's arguments for declaring the agreements void relate to the descendants' future right to use and occupy those specific parcels. This Court therefore concludes that the bankruptcy court erred in not dismissing claims three through seven of Lake Minnewaska's complaint. *Slenderella, supra,* 286 F.2d at 490.[14]

## CONCLUSION

The appeal by Lake Minnewaska, 81 Civ. 5542, is remanded to the bankruptcy court for further proceedings not inconsistent with this Opinion.

The bankruptcy court's decision sustaining summary jurisdiction over Lake Minnewaska's third, fourth, fifth, sixth, and seventh causes of action is reversed. The cross-appeal, 81 Civ. 5543, is therefore remanded to the bankruptcy court with instructions to dismiss those causes of action.

Each side is to bear its own costs and attorneys' fees.

It is SO ORDERED.

---

**13.** For example, in an ordinary bankruptcy case, a *bona fide* lessee of the debtor's property who is in possession when the bankruptcy petition is filed has a substantial adverse claim to such property which deprives the court of summary jurisdiction. In a chapter XI case, however, the court would have summary jurisdiction in that situation because the lessee does not assert *ownership* of the property. 8 Collier on Bankruptcy ¶ 3.02, at 158–59 (14th ed. 1975).

**14.** In light of this Court's conclusion that summary jurisdiction does not exist over Lake Minnewaska's state law claims, it is unnecessary to consider the issue of whether the bankruptcy court abused its discretion in failing to abstain. It is also unnecessary to resolve whether an *in rem* state court proceeding, which was commenced by Lake Minnewaska in 1968 and apparently never formally discontinued, would itself defeat summary jurisdiction because the state court has constructive possession of the property.