BARRETT, Circuit Judge.
 

 Boise City Farmers’ Cooperative (Boise City) appeals from a final order of the District Court for the Western District of Oklahoma, dismissing an adversary proceeding brought by Boise City in the Bankruptcy Court for the Western District of Oklahoma, against its former directors, Jim Palmer, E.H. Allen, Gorden Folkers, Roy Baker, and Guy Ottinger (Directors), appel-lees herein. Boise City initiated the adversary proceeding based upon an Oklahoma state claim imposing statutory liability on corporate directors, such as defendants-ap-pellees, under certain circumstances. The bankruptcy court entered an interlocutory order which included a ruling upholding its jurisdiction to hear the case under 28 U.S.C. § 1471. The district court granted Directors’ motion for leave to appeal the bankruptcy court’s interlocutory order on jurisdiction, and thereafter dismissed the adversary proceeding without prejudice on the ground that neither it nor the bankruptcy court had jurisdiction over the subject matter of the proceeding. It is from this order of the district court that Boise City appeals.
 

 I. FACTS
 

 Appellant Boise City Farmers’ Cooperative is a grain storage marketing cooperative serving the Oklahoma and Texas panhandles. On February 4, 1980, Boise City filed a voluntary petition in the United States Bankruptcy Court for the Western District of Oklahoma, seeking reorganization under Chapter 11, Title 11 of the United States Code. On May 30, 1980, the bankruptcy court confirmed Boise City’s reorganization plan pursuant to Chapter 11.
 

 On October 22, 1980, the newly reorganized Boise City commenced an adversary proceeding in the bankruptcy court against its former directors, independent of its original Chapter 11 reorganization proceeding. Boise City’s claim was a state law claim arising under section 431, Title 18 of the Oklahoma statutes, which provides in relevant part as follows: “If the indebtedness of a corporation [cooperative] shall at any time exceed the amount of its subscribed capital stock and surplus, the directors ascending thereto are personally and individually liable to such excess to the creditors.” Okla.Stat. tit. 18, § 431 (1951). Jim Palmer, E.H. Allen, Gorden Folkers,
 
 *862
 
 Roy Baker and Guy Ottinger were members of the board of directors of Boise City prior to the filing of the bankruptcy petition of February 4, 1980, and were named as defendants. Boise City maintains that the Chapter 11 reorganization plan assigned to it all the claims of the creditors in existence prior to its filing Chapter 11 bankruptcy. Boise City argues that among the claims assigned to it was the creditors’ right to hold Directors personally liable for violating section 431, Title 18 of the Oklahoma statutes.
 

 Directors responded to the adversary proceeding by challenging the jurisdiction of the bankruptcy court under 28 U.S.C. § 1471. In addition, Directors requested that the bankruptcy court abstain, considering the uniqueness of the assignment question under Oklahoma law. On March 24, 1982, the bankruptcy court entered an order in which it expressed doubt about its own jurisdiction, but assuming jurisdiction, the court decided to abstain. On May 24, 1982, however, the bankruptcy court vacated its order of March 24, 1982, and informed the parties that it would exercise jurisdiction in the adversary proceeding.
 

 On August 31, 1982, the bankruptcy court entered its Memorandum Order and, among other things, denied Directors’ motion to dismiss for lack of subject matter jurisdiction; refused to certify a question to the Oklahoma Supreme Court regarding the Oklahoma directors’ liability statute; and disposed of Directors’ motion to dismiss for failure to state a claim (finding that the creditors’ claim under § 431 was assignable under Oklahoma law).
 

 The portion of the bankruptcy court’s August 31, 1982, Memorandum Order, to the extent pertinent to the subject matter jurisdiction issue, stated:
 

 Plaintiff claims that, under the terms of the reorganization plan, any rights which the debtor’s creditors may have had against the debtor’s former directors under the above-quoted statute [18 Okla. stat. § 431 (1971) ] were assigned to the reorganized debtor. This Court believes that this action is sufficiently related to the debtor’s bankruptcy case so as to confer jurisdiction upon this Court under 28 U.S.C.A. § 1471. Defendants’ motion to dismiss for lack of subject matter jurisdiction is therefore denied.
 

 (R. Vol. I, p. 5). It is important to note that the bankruptcy court’s order regarding subject matter jurisdiction did not depend upon a finding that the Oklahoma state law claim was in fact assigned to Boise City. Rather, the bankruptcy court found that it had jurisdiction
 
 assuming
 
 that an assignment of claims had taken place. Accordingly, the bankruptcy court’s August 31, 1982, ruling on jurisdiction did not reach the merits of the adversary proceeding. It was only with respect to the motion to dismiss for failure to state a claim that the assignment issue was addressed by the bankruptcy court.
 

 On November 17, 1982, the district court granted Directors’ application for leave to appeal the bankruptcy court’s interlocutory order for the purpose of reviewing the question of whether or not the bankruptcy court had jurisdiction over the subject matter as contemplated by its Memorandum Order of August 31,1982. (R.Vol. I, p. 25.) Oral arguments were held on June 16, 1983, and August 25, 1983. The district court entered the following Order on August 25, 1983:
 

 [Tjhis Court finds that the claims that formed the basis of the Adversary Proceeding in question herein were not assigned from the creditors of the debtor to the reorganized debtor. The adversary claim attempted to be pursued by plaintiff does not arise in or relate to a case under Title XI, U.S.C., as required by 28 U.S.C. § 1471(b). Neither this Court nor the Bankruptcy Court for the Western District of Oklahoma have jurisdiction over the adversary claim and that claim should be dismissed without prejudice to the refiling of the claim in a court of proper jurisdiction.
 

 IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the claims that form the basis of the adversary proceeding in question herein were
 
 *863
 
 never assigned from the creditors of the debtor to the reorganized debtor, the adversary claim does not arise in or relate to a case under Title 11, U.S.C., as required by 28 U.S.C. § 1471(b), and neither this Court nor the Bankruptcy Court for the Western District of Oklahoma has jurisdiction of the adversary claim of plaintiff. That claim is hereby dismissed without prejudice to its being refiled in a court of proper jurisdiction.
 

 (R.Vol. I, p. 219.)
 

 The district court, in its Order of August 25, 1983, found that “neither this Court nor the Bankruptcy Court for the Western District of Oklahoma has jurisdiction over the adversary claim of plaintiff,” because there was no assignment of the creditors’ liability claim against Directors to Boise City under the reorganization plan. Because there was no assignment, there was no claim which arose in or was related to a case under Title 11, of the United States Code as required by 28 U.S.C. § 1471. (R.Vol. I, p. 219.)
 

 Among other things, the parties ask us to review the district court’s ruling that neither it nor the bankruptcy court had subject matter jurisdiction over the case in light of the Supreme Court’s decision in
 
 Northern Pipeline Construction Company v. Marathon Pipeline Company,
 
 458 U.S. 50, 102 S.Ct. 2858, 78 L.Ed.2d 598 (1982). In reviewing the district court’s ruling in light of
 
 Northern Pipeline,
 
 we will consider the following issues: (1) the applicability, if any, of
 
 Northern Pipeline
 
 at the time the bankruptcy court entered its interlocutory order; (2) the effect of
 
 Northern Pipeline
 
 on the district court’s jurisdiction to hear the interlocutory appeal; (3) the applicability of
 
 Northern Pipeline
 
 at the time the district court entered its order; and (4) the effect of
 
 Northern Pipeline
 
 on the bankruptcy court’s order. Our consideration of these issues will lead us to hold that (1)
 
 Northern Pipeline
 
 was not applicable at the time the bankruptcy court entered its interlocutory order; (2) the district court retained both original and appellate jurisdiction under
 
 Northern Pipeline;
 
 (3)
 
 Northern Pipeline
 
 was the governing law and applied to the district court’s review of the bankruptcy court’s interlocutory order; and (4) the bankruptcy court did not have jurisdiction over the adversary proceeding after December 24, 1982 because the proceeding was not sufficiently related to the bankruptcy action under
 
 Northern Pipeline.
 

 II. THE BANKRUPTCY COURT’S JURISDICTION
 

 In a plurality opinion, the Supreme Court in
 
 Northern Pipeline
 
 held, “that 28 U.S.C. § 1471 (1976 ed., Supp. IV), as added by § 241(a) of the Bankruptcy Act of 1978, has impermissibly removed most, if not all, of ‘the essential attributes of the judicial power’ from the Art. Ill district court, and has vested those attributes in a non-Art. Ill adjunct. Such a grant of jurisdiction cannot be sustained as an exercise of Congress’ power to create adjuncts to Art. III courts.” 458 U.S. at 87, 102 S.Ct. at 2880. The Court also held, however, that the
 
 Northern Pipeline
 
 decision would be applied prospectively only,
 
 id.
 
 at 88, 102 S.Ct. at 2880, and it ultimately stayed the effect of its decision until December 24, 1982.
 
 Northern Pipeline,
 
 459 U.S. 813, 103 S.Ct. 199, 74 L.Ed.2d 160 (1982).
 

 We agree with the analysis of the Sixth Circuit Court of Appeals in
 
 White Motor Corp. v. Citibank, N.A.,
 
 704 F.2d 254 (1983). There the court concluded “that the prospective-only provision in
 
 Northern Pipeline
 
 simply validates orders and dispositions by the bankruptcy courts which became final in the Bankruptcy Court as of December 24, 1982.”
 
 Id.
 
 at 258. We likewise hold that bankruptcy courts had subject matter jurisdiction to enter final orders in related proceedings under 28 U.S.C. § 1471 until December 24, 1982, the effective date of
 
 Northern Pipeline.
 

 In the instant case, the bankruptcy court entered its Memorandum Order on August 31,1982, some four months before the expiration of the Supreme Court’s
 
 Northern Pipeline
 
 stay. Therefore, the bankruptcy
 
 *864
 
 court was correct in asserting that it had subject matter jurisdiction under 28 U.S.C. § 1471 Boise City’s adversary proceeding was related to or arose out of its bankruptcy case, because under
 
 Northern Pipeline,
 
 the bankruptcy court’s jurisdictional grant under 28 U.S.C. § 1471 was valid when the court entered its interlocutory order on August 31, 1982.
 

 It is important to reiterate here that the bankruptcy court’s interlocutory order upholding jurisdiction was not predicated upon a factual finding that the creditors’ Oklahoma state law claim was assigned to Boise City. The bankruptcy court simply ruled, with respect to subject matter jurisdiction, that assuming the creditors’ claim was assigned, the adversary proceeding was sufficiently related to Boise City’s bankruptcy case so as to permit the court’s exercise of jurisdiction under 28 U.S.C. § 1471. It was the bankruptcy court’s order on subject matter jurisdiction, not its ruling on the assignment issue, that was before the district court.
 

 III. THE DISTRICT COURT’S JURISDICTION
 

 The parties dispute the effect of
 
 Northern Pipeline
 
 upon the subject matter jurisdiction of the federal district courts. First, we have held that the Supreme Court in
 
 Northern Pipeline
 
 merely invalidated 28 U.S.C. § 1471(c), leaving the grant of original jurisdiction over bankruptcy matters to the district courts under 28 U.S.C. §§ 1471(a) and (b) intact.
 
 Oklahoma Health Services Federal Credit Union v. Webb,
 
 726 F.2d 624, 625 (10th Cir.1984). Second, we agree with
 
 White Motor Corp., supra,
 
 that
 
 Northern Pipeline
 
 does not question or affect the jurisdiction of the district courts. 704 F.2d at 259. Third, we have said that the Supreme Court’s holding in
 
 Northern Pipeline
 
 is quite limited.
 

 It pertains only to the proposition that a “traditional state common-law action, not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law, must, absent the consent of the litigants, be heard by an Article III court if it is to be heard by any court or agency of the United States.”
 

 Matter of Colorado Energy Supply, Inc.,
 
 728 F.2d 1283, 1285 (10th Cir.1984) (quoting
 
 Northern Pipeline,
 
 458 U.S. at 92, 102 S.Ct. at 2882). Therefore, we reiterate our previous holding that
 
 Northern Pipeline
 
 merely invalidates 28 U.S.C. § 1471(c) and does not affect the district courts’ original jurisdiction over bankruptcy matters. Notwithstanding the district court’s original jurisdiction over bankruptcy matters, however, it is important to note that the district court exercised appellate jurisdiction in this case.
 

 On November 17, 1982, the district court granted Directors’ application for leave to appeal pursuant to subpart (d) of Interim Bankruptcy Rule 8004 to fully consider the bankruptcy court’s interlocutory order that it had subject matter jurisdiction in the adversary proceeding. (R.Vol. I, p. 25.) In their Designation of Record on Appeal and Statement of Issue on Appeal filed November 29, 1982, Directors stated:
 

 The only issue raised on appeal is the Defendants’ challenge to the jurisdiction of the Bankruptcy Court under 28 U.S. C.A. § 1471 on the ground that this adversary proceeding does not relate or refer to the Plan of Reorganization or to a case under the Bankruptcy code nor does it arise under the case under the Bankruptcy code.
 

 (R.Vol. II.)
 

 At the time this appeal from the bankruptcy court was filed, and thereafter decided by the district court, appellate jurisdiction was vested in the district court to hear appeals of interlocutory orders under the Bankruptcy Reform Act of 1978. Specifically, 28 U.S.C. § 1334(b), made effective during the “transition period” by sections 405(c)(1) and (2) of the Act, read as follows: “The district courts for such districts shall have jurisdiction of appeals from interlocutory orders and decrees of bankruptcy courts, but only by leave of the district court to which the appeal is taken.” Bankruptcy Reform Act of 1978, Pub.L.
 
 *865
 
 No. 95-598, § 1334, 92 Stat. 2668 (1978).
 
 See also In Re Shannon,
 
 670 F.2d 904, 906 (10th Cir.1982).
 

 Section 1334 was substantially amended on July 10, 1984, and the district courts’ appellate jurisdiction is granted in 28 U.S.C. § 158. Specifically, subsection (a) provides:
 

 (a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees,
 
 and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges
 
 entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.
 

 Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, § 553, 98 Stat. 392 (1984) (emphasis added). Therefore, contrary to the argument of Directors, the district courts had both original and appellate jurisdiction over bankruptcy matters at the time this appeal was heard by the district court. Moreover, the district court was properly exercising appellate jurisdiction in reviewing the bankruptcy court’s interlocutory order.
 

 IV. THE DISTRICT COURT’S DISPOSITION
 

 On June 16,1983, the district court entertained oral argument on the interlocutory order. Much of the argument centered around whether or not the reorganization plan assigned to the newly reorganized debtor, Boise City, the creditors’ Oklahoma state law claim against Directors. At the conclusion of oral argument, the court engaged in the following exchange with counsel for Boise City:
 

 MR. SCHWABE: My real confusion, I think we’re here today for the Court to decide whether or not there is jurisdiction. I think what the Court is ruling is whether we are right or we’re wrong on the assignment of the claims issue. This Court is finding that this Court does not have jurisdiction because it is not a case that is a related proceeding under the referral rules or a case related to the Chapter 11 case.
 

 THE COURT: In effect, I’m saying Judge Berry erred when he held that it was.
 

 MR. SCHWABE: A related proceeding. And this is regardless of what our position is on the claimed assignment leaving that issue open for determination by a State Court.
 

 THE COURT: No. Really not, Mr. Schwabe. I think and hold if that question is properly before me that this plaintiff, your Boise City Farmers’ Cooperative, the newly organized company, never had by assignment or otherwise these claims of the creditors of the old Cooperative against the Board of Directors of the old Cooperative. I say you never acquired it by assignment in the newly reorganized plan. Having not acquired it, their rights by assignment, the rights still rests with them, the creditors of the old bankrupt concern....
 

 (R.Vol. Ill, pp. 22-23.) It is apparent from the above-quoted colloquy that the district court predicated its ruling on subject matter jurisdiction on a fact finding that the purported assignment had not been effected. Yet the bankruptcy court considered the assignment question only in light of the Directors’ motion to dismiss for failure to state a claim upon which relief could be granted; an issue not before the district court. (R.Vol. I, pp. 6-10.)
 

 In our view, the district court should not have reached the issue of whether an assignment had been effected. The district court should have ascertained the governing law at the time of its decision. Had it done so, we believe that the district court would have found
 
 Northern Pipeline
 
 to be the operative law in reviewing the bankruptcy court’s interlocutory order. This was the conclusion in
 
 White Motor Corp., supra,
 
 wherein the court considered the effect of the Supreme Court’s prospective application of
 
 Northern Pipeline
 
 on final
 
 *866
 
 and interlocutory orders. There the court said:
 

 [Ffinal orders ...
 
 are the only actions of the bankruptcy courts which we believe the Supreme Court intended to protect in its prospective-only directive.
 

 Thus, neither the bankruptcy courts nor special masters appointed by bankruptcy courts retain jurisdiction under § 1471(c) of Title 28, the provision invalidated in
 
 Northern Pipeline,
 
 to decide
 
 unadjudicated
 
 cases and issues
 
 after
 
 December 24, 1982.
 

 White Motor Corp.,
 
 704 F.2d at 259 (emphasis added).
 

 We agree that the effect of the Supreme Court stay and its prospective-only application of
 
 Northern Pipeline
 
 means that
 
 Northern Pipeline
 
 has no effect on bankruptcy eases filed and finally 'adjudicated before December 24, 1982.
 
 Northern Pipeline
 
 applies to adversary proceedings, however, which were filed prior to December 24, 1982, but not finally adjudicated until after December 24, 1982. This is precisely the situation in the case at bar.
 

 [W]e find that the Supreme Court did not intend to sanction the continued operation of the bankruptcy courts
 
 under § 1471(c)
 
 after December 24, 1982, with respect to pending matters. To prevent undue disruption ... the Court, by foreclosing retrospective application of
 
 Northern Pipeline
 
 simply refused to permit challenges to past acts or final determinations of the bankruptcy courts.
 

 White Motor Corp.,
 
 704 F.2d at 258 (emphasis in original).
 

 “[A] court is to apply the law in effect at the time it renders its decision unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.”
 
 Franklin v. State of New Mexico, etc.,
 
 730 F.2d 86, 87 (10th Cir.1984) (citing
 
 Bradley v. Richmond School Board,
 
 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974)). An appellate court must also apply the law in effect at the time it renders its decision.
 
 Bradley,
 
 416 U.S. at 714, 94 S.Ct. at 2017.
 

 The bankruptcy court’s Memorandum Order was entered on August 31, 1982. While the bankruptcy court may have properly applied
 
 pre-Northem Pipeline
 
 law in exercising jurisdiction, its Memorandum Order was interlocutory. It was not a final adjudication of the adversary proceeding, although it was an appealable order. When the district court entered its Order on August 25, 1983, the
 
 Northern Pipeline
 
 stay had expired; the result being that the bankruptcy court’s subject matter jurisdiction was subject to the law articulated under
 
 Northern Pipeline.
 
 As we noted above, an interlocutory order .entered prior to the expiration of the
 
 Northern Pipeline
 
 stay is not protected by the prospective-only application of
 
 Northern Pipeline.
 
 Since there is no manifest injustice to the parties in applying
 
 Northern Pipeline
 
 to this interlocutory order, the district court should have applied
 
 Northern Pipeline
 
 in reviewing the jurisdictional issue before it. .......
 

 The sole question properly before the district court was whether or not the bankruptcy court erred in ruling it had jurisdiction over the adversary proceeding. After determining the applicable law, the district court’s primary inquiry was the effect of
 
 Northern Pipeline
 
 on the bankruptcy court’s jurisdiction over the adversary proceeding after December 24, 1982. If the bankruptcy court could not have jurisdiction over the adversary proceeding regardless of the merits of the action, then the adversary proceeding should have been dismissed on that basis without reaching the substance of the bankruptcy court’s interlocutory order.
 

 Determining the effect of
 
 Northern Pipeline
 
 on the bankruptcy court’s interlocutory order presents a question of law. When the issue before us is a question of law, the standard of review on appeal is the same as that which would be applied by the trial court in making its initial ruling.
 
 J & H Auto Trim Co. v. Bellefonte Ins. Co.,
 
 677 F.2d 1365 (11th Cir.1982). Because the district court did not review the bankruptcy
 
 *867
 
 court’s jurisdiction in light of
 
 Northern Pipeline,
 
 we will do so here.
 

 We hold that the Oklahoma state law claim, which imposes liability upon directors of a corporation who permit corporate indebtedness to exceed the amount of its subscribed capital stock and surplus, is precisely the type of state-created right, adjudication of which the Supreme Court held to be beyond Congress’ power to assign to the bankruptcy courts.
 

 [W]hen Congress creates a statutory right, it clearly has the discretion, in defining that right, to create presumptions, or assign burdens of proof, or prescribe remedies; it may also provide that persons seeking to vindicate that right must do so before particularized tribunals created to perform the specialized adjudicative tasks related to that right. Such provisions do, in a sense, affect the exercise of judicial power, but they are also incidental to Congress’ power to define the right it has created. No comparable justification exists, however, when the right being adjudicated is not of congressional creation. In such a situation, substantial inroads into functions that have traditionally been performed by the Judiciary cannot be characterized merely as incidental extensions of Congress’ power to define rights that it has created. Rather, such inroads suggest unwarranted encroachments upon the judicial power of the United States, which our Constitution reserves for Art. Ill courts.
 

 We hold that the Bankruptcy Act of 1978 carries the possibility of such an unwarranted encroachment. Many of the rights subject to adjudication by the Act’s bankruptcy courts ... are not of Congress’ creation. Indeed, the cases before us, which center upon appellant Northern’s claim for damages for breach of contract and misrepresentation, involve a right created by
 
 state
 
 law, a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the Bankruptcy Court. Accordingly, Congress’ authority to control the manner in which the right is adjudicated, through assignment of historically judicial functions to a non-Art. Ill “adjunct,” plainly must be deemed at a minimum....
 

 Northern Pipeline,
 
 458 U.S. at 83-84, 102 S.Ct. at 2877-2878 (emphasis in original) (footnotes omitted).
 

 We hold that regardless of the propriety of its interlocutory order, the bankruptcy court no longer has jurisdiction under
 
 Northern Pipeline
 
 over the adversary proceeding initiated by Boise City. While the bankruptcy court’s assertion of jurisdiction under
 
 pr^.-Northern Pipeline
 
 law may have been proper, the adversary proceeding was not finally adjudicated by the bankruptcy court before
 
 Northern Pipeline
 
 became effective.
 
 Northern Pipeline
 
 is thus applicable to this “unadjudicated bankruptcy case.” This being so, we hold that under
 
 Northern Pipeline,
 
 Boise City’s adversary proceeding is not sufficiently related to its original bankruptcy proceeding to confer jurisdiction upon the bankruptcy court.
 

 In reviewing the bankruptcy court’s interlocutory order on jurisdiction, the district court should not have reached the substance of the bankruptcy court’s ruling, particularly the assignment issue. We reverse the district court to the extent that it reached the substance of the bankruptcy court’s interlocutory order. We also reverse the district court’s ruling that it did not have jurisdiction. We affirm, however, the district court's ruling that the bankruptcy court did not have jurisdiction to adjudicate this adversary proceeding, and the court’s dismissal of the claim without prejudice to its being refiled in a court of proper jurisdiction.
 

 AFFIRMED in part, REVERSED in part.