## In re SATELCO, INCORPORATED, Debtor.

## SATELCO, INCORPORATED

### v.

NORTH AMERICAN PUBLISHERS, INC., Abic Epstein Realty Associates, Commercial Telephone Co., Cornerstone Investments, Inc., Fred Epperson Insurance Agency, Litecomm Supply Company, Loren H. Drum Company, Management Recruiters, Maria Theresa Moran, Metro Media Corporation, Micro Craft Corporation, Moreman Tire Company, Quorum Petroleum International, Inc., Unilock Furniture Systems, Inc., United Aerospace.

Bankruptcy No. 385–31780–A–11.

Adv. Nos. 385–8113, 385–8102 through 385–8112 and 385–8114 through 385–8116.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

March 13, 1986.

Jay Vogelson, Moore & Peterson, Dallas, Tex., for debtor, Satelco, Inc.

No other counsel—default.

## MEMORANDUM OPINION

HAROLD C. ABRAMSON, Bankruptcy Judge.

On 15 July 1985 Satelco, Incorporated (hereinafter "Debtor") filed its petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101, et seq. Debtor was, and is, engaged in the business of supplying long distance telephone service to residential and commercial customers, most of whom are located within the State of Texas. On or about 31 December 1985 Debtor filed a series of fifteen adversary proceedings, each entitled "Complaint to Compel Turnover of Property." These proceedings differ only with respect to the individual defendant named and the amount claimed. The substance of these

complaints is virtually identical, to wit, that the defendants contracted with Debtor for long distance telephone service; that the defendants used said services and incurred charges pursuant to the agreements; that despite demands by Debtor for payment of such charges, the defendants refused to pay; that such charges represent funds which are property of the estate; and that the defendants are obligated, under Bankruptcy Code § 542(a), to pay such charges, plus interest and attorneys' fees as provided by Texas law.[1]

On 17 February 1986 these adversary proceedings were scheduled for pre-trial conference, at which time the Court *sua sponte* raised the question of its jurisdiction to hear and finally adjudicate a dispute between a debtor and a non-creditor defendant based upon state contract law, in light of the Supreme Court's ruling in *Northern Pipeline Construction Company v. Marathon Pipe Line Company*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (hereinafter "Marathon"). After hearing the arguments of counsel, the Court took the jurisdictional question under advisement.[2] This opinion represents the Court's findings and conclusions.[3]

## DISCUSSION

As the national bankruptcy bar and bench have quickly discovered, the post-*Marathon* era has developed into one of the most confusing periods in the history of federal jurisprudence. The explosive proliferation of lower court opinions following *Marathon* and the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353 (hereinafter "1984 Amendments") attests to the degree of uncertainty and resulting inconsistency among lawyers and judges. As might be expected, this dissonance has led to a decline in the

ability of counsel to accurately evaluate, and determine a proper forum for, the wide variety of actions which ordinarily arise in the course of administering a bankruptcy estate. The Court has previously undertaken a discussion of the various points of view concerning the permissible scope of a bankruptcy court's jurisdiction, and will not reiterate that discussion here.[4] It is sufficient at this time to note that *Marathon* found invalid the attempt by Congress to allow the bankruptcy courts, which find their *raison d'etre* in Article I, to exercise powers reserved to the Article III judiciary. As Justice O'Connor recently stated, albeit in dicta in a non-bankruptcy case,

> "[t]he Court's most recent pronouncement on the meaning of Article III is [*Marathon*]. A divided Court was unable to agree on the precise scope and nature of Article III's limitations. The Court's holding in that case establishes only that *Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to appellate review.*"

*Thomas v. Union Carbide Agricultural Products Company*, —— U.S. ——, ——, 105 S.Ct. 3325, 3334–35, 87 L.Ed.2d 409 (1985) (emphasis added). The application of this dicta to the adversary proceedings at bar offers a glimpse of the basis for the Court's jurisdictional concerns. These proceedings involve "traditional contract actions arising under state law" and Debtor has attempted to invoke the jurisdiction of this Court to "adjudicate, render final judgment, and issue binding orders." Whatever else the 1984 Amendments may have purported to do, they clearly did not change this Court's status from Article I to

1. *See* Tex.Rev.Civ.Stat.Ann. Art. 2226 (Vernon Supp.1982).

2. Because a similar question had arisen in a recent case, in which the Court was required on remand to exhaustively review the question, no further briefing or argument was deemed necessary. *See M & E Contractors, Inc. v. Rodgers*

*Construction, Inc. and Rolex Texas Realty Corporation*, Adv. No. 385–3025 (Bkrtcy.N.D.Tex. 2 January 1986).

3. Bankruptcy Rule 7052.

4. *See M & E Contractors, supra* Note 2.

Article III; *Marathon* would therefore appear to preclude Debtor's action in this Court, should Justice O'Connor's statement be considered binding authority.[5] In a similar vein, the district court in *In re WWG Industries, Inc.*, 44 B.R. 287, 291 (W.D.Ga. 1984) acknowledged in dicta that

"[t]he *Marathon* case eliminated the theory that the bankruptcy courts could be given plenary jurisdiction under Article I. *See Marathon, supra*, 458 U.S. at 63–76, 102 S.Ct. at 2867–2874. In response, Congress, rather than grant the bankruptcy courts Article III status, chose to place the type of noncore, related bankruptcy proceeding involved in this case [i.e., an action to collect accounts receivable owed the debtor] with the district court."

This explicit recognition that the bankruptcy courts, as Article I courts, are courts of *limited* jurisdiction, seems quite appropriate in the aftermath of *Marathon*. Unfortunately, this Court concludes that while Congress clearly refused to grant the bankruptcy courts Article III status, Congress nonetheless intended bankruptcy courts to exercise certain Article III authority. More specifically, the Court surmises that Congress fully intended to allow this Court to adjudicate state law contract disputes such as the proceedings at bar.

The Court acknowledges that the 1984 Amendments are certainly less clear than desired, resulting in a maelstrom of conflicting decisions. This confusion is doubtless due to the failure of Congress to include any legislative history from which the courts could legitimately draw an inference.[6] The Courts have generally split into two camps, those which feel the 1984 Amendments resolved the constitutional deficiencies of the 1978 Code, and now permit bankruptcy courts to adjudicate state law contract actions by the estate against noncreditor defendants; *see e.g., In re All American of Ashburn, Inc.*, 13 B.C.D. 93, 49 B.R. 926 (Bkrtcy.N.D.Ga.1985); *In re Delorean Motor Company*, 13 B.C.D. 60, 49 B.R. 900 (Bkrtcy.E.D.Mich.1985); *In re Lion Capital Group*, 46 B.R. 850 (Bkrtcy. S.D.N.Y.1985); *In re Shell Materials, Inc.*, 13 B.C.D. 185 (Bkrtcy.M.D.Fla.1985); *In re Franklin Computer Corporation*, 13 B.C.D. 209, 50 B.R. 620 (Bkrtcy.E.D.Pa. 1985); *In re Harry C. Partridge, Jr. & Sons, Inc.*, 48 B.R. 1006 (S.D.N.Y.1985); *In re Ram Construction Company, Inc.*, 49 B.R. 363 (W.D.Pa.1985); *In re Bucyrus Grain Company, Inc.*, 56 B.R. 204 (Bkrtcy.D.Ks.1986); and those which feel the 1984 Amendments must be read in a manner consistent with *Marathon, see, e.g. In re Pierce*, 44 B.R. 601, 602 (D.Colo. 1984); *In re Alexander*, 13 B.C.D. 47, 48, 49 B.R. 733 (Bkrtcy.D.N.D.1985); *In re Illinois-California Express, Inc.*, 13 B.C.D. 153, 156, 50 B.R. 232 (Bkrtcy.D.Colo.1985); *In re Atlas Automation, Inc.*, 42 B.R. 246 (Bkrtcy.E.D.Mich.1984); *In re Bokum*, 49 B.R. 854 (Bkrtcy.D.Colo.1985); *In re Morse Electric Company, Inc.*, 47 B.R. 234 (Bkrtcy.N.D.In.1985); *In re Nanodata Computer Corporation*, 52 B.R. 334 (Bkrtcy.W.D.N.Y.1985); *In re Zweygardt*, 52 B.R. 229 (Bkrtcy.D.Colo.1985); *In re Yagow*, 53 B.R. 737 (Bkrtcy. D.N.D.1985); *In re Crabtree*, 55 B.R. 130 (Bkrtcy.E.D. Tenn.1985); *In re Smith-Douglass, Inc.*, 43 B.R. 616 (Bkrtcy.E.D.N.C.1984).[7]

---

**5.** It should be noted that the 1984 Amendments took effect in October 1984, several months prior to Justice O'Connor's explication of the meaning of *Marathon*. This is, if nothing more, at least an indication that the 1984 Amendments did not eliminate the concerns expressed in *Marathon*, with respect to the scope of the bankruptcy court's powers.

**6.** Certain comments of individual legislators have been published in the Congressional Record and various professional magazines. The Supreme Court has admonished the judiciary against relying upon such unofficial commentary. "In surveying legislative history we have repeatedly stated that the authoritative source for finding the legislature's intent lies in the committee reports on the bill ... we have eschewed reliance on the passing comments of one member ... and casual statements from floor debates." *Garcia v. United States*, 469 U.S. 70, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984).

**7.** Of course, some core-noncore determinations are more clear-cut than others. *See In re Lanza*, 51 B.R. 125, 126 (Bkrtcy.D.N.J.1985).

The Court has previously expressed its sympathy with the latter group of cases, but has stated that the precise terms of the statute required, in that *limited* proceeding, that it would follow the former and hold an action to collect an account receivable to be a core proceeding.[8] The Court is not thus constrained in the cases at bar, and will undertake an exploration of the valildity of the two bases of jurisdiction invoked by Debtor.

### 1. *Turnover*

■ Debtor has alleged this Court has jurisdiction to hear these actions, and therefore to enter default judgments, regarding collection of accounts receivable by virtue of Bankruptcy Code § 542, which states:

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

(c) Except as provided in section 362(a)(7) of this title, an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith and other than in the manner specified in subsection (d) of this section, to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced.

(d) A life insurance company may transfer property of the estate or property of the debtor to such company in good faith, with the same effect with respect to such company as if the case under this title concerning the debtor had not been commenced, if such transfer is to pay a premium or to carry out a nonforfeiture insurance option, and is required to be made automatically, under a life insurance contract with such company that was entered into before the date of the filing of the petition and that is property of the estate.

(e) Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.

Debtor further alleges that these are core proceedings by virtue of 28 U.S.C. § 157(b)(2)(E), which classifies as core proceedings "orders to turn over property of the estate." It is therefore incumbent upon the Court to examine the meaning of "turnover" and "property of the estate" in evaluating its decision.

Under the Bankruptcy Act, it was necessary for the court to determine whether an action was summary or plenary in nature before it could ascertain whether it had

---

**8.** In *M & E Contractors, supra* Note 2, the Court articulated its findings and conclusions pursuant to an order of remand by the District Court, and was restricted to a core-noncore determination and a discussion of the ability of the bankruptcy court to conduct a jury trial. Because the order of remand was thus limited, the Court did not elaborate on, but did allude to, severe reservations as to the constitutionality of 28 U.S.C. § 157(b)(2)(*O*). *See M & E Contractors* at page 11, footnote 5. This apparently has caused some confusion among members of the local bar, who erroneously conclude that this Court has summary jurisdiction over accounts receivable collection actions against non-creditor defendants.

jurisdiction to enter a final order. To a large degree, the 1984 Amendments have reinstated just such a preliminary evaluation. Under 28 U.S.C. § 157(b)(3), the bankruptcy court has a duty to determine the core or noncore nature of the proceeding before it. The bankruptcy court has the power to enter final orders in core proceedings, subject to appellate review under the "clearly erroneous" standard. *See* 28 U.S.C. § 157(b)(1), § 158(c), and Bankruptcy Rule 8002. In noncore or related proceedings, absent the affirmative consent of the parties, the bankruptcy court is limited to the submission of proposed findings of fact and conclusions of law to the District Court, subject to *de novo* review. See 28 U.S.C. § 157(c).[9] To the extent these classifications may be analogized to the old summary-plenary dichotomy under the Act, case law discussing the scope of the pre-Code bankruptcy court's jurisdiction will be relevant.

Under the Act, the bankruptcy court had summary jurisdiction over property in the actual or constructive possession of the debtor. If property was not within the possession of the debtor, *or* if the debtor's right to the property was disputed by a substantially adverse claim, the dispute was not properly subject to the bankruptcy court's jurisdiction; rather, the parties were required to seek resolution in a court of plenary jurisdiction, i.e., a state or federal district court.[10] *Slenderella Systems of Berkely, Inc. v. Pacific Telephone & Telegraph Company*, 286 F.2d 488, 489–90 (2d Cir.1961); *In re Lake Minnewaska Mountain Houses, Inc.*, 42 B.R. 366 (S.D. N.Y.1984). *See also 2 Collier on Bankruptcy* ¶ 23.07 at 526–7 (14th ed. 1976) ("if there is a real and substantial controversy of law or fact as to property held adversely to a bankrupt—'a contested matter of right, involving some fair doubt and reasonable room for controversy'—the bank-

ruptcy court is without jurisdiction to adjudicate the matter, but the trustee must have resort to a plenary suit.") It thus fell upon the court to make the threshold determination of whether a factual or legal dispute as to a bankrupt's right to the property existed. This determination turned upon whether a substantial claim adverse to the bankrupt's claim existed. Whether that claim had a probability of success on the merits was largely irrelevant. *Collier, supra* at 531. It is this preliminary determination which has been resurrected by the 1984 Amendments.

"These limits on the jurisdiction of the bankruptcy court still exist under the [1984 Amendments], albeit under a slightly different nomenclature which simply places actions arising under state law outside the compass of federal bankruptcy court jurisdiction ... as to the substantive parameters of bankruptcy court jurisdiction, the current Act is precisely in line with the pre-1979 law and the entire range of bankruptcy court jurisdiction is accordingly predicated upon possession, actual or constructive, of the debtor's property ... [a]nd property with respect to which a substantial adverse claim has been raised has never been considered within the actual or constructive possession of the bankruptcy court."

*In re Midwestern Companies, Inc.*, 49 B.R. 98 (Bkrtcy.W.D.Mo.1985). *See also Collier, supra*, ¶ 23.05 at 480–483. It has been argued by counsel in other proceedings, based upon their reading of this Court's earlier opinion[11], that where a defendant has failed to answer or file a motion to dismiss or abstain, and has effectively defaulted, no "substantial adverse claim" has been raised, and that jurisdiction therefore exists to enter an order of default. Such an argument misses the basic thrust of the doctrine of possession as a

**9.** At least one court has suggested that, in the interests of judicial economy, noncore proceedings should be brought in the district court. *In re Crabtree*, 55 B.R. 130 (Bkrtcy.E.D.Tenn.1985).

**10.** Use of the disjunctive should be carefully noted. Debtor must establish that possession

exists, regardless of whether there may be substantial claims adverse to the interest of the estate in the property in question.

**11.** *M & E Contractors, supra* Note 2.

predicate to the exercise of jurisdiction by the bankruptcy court. A substantial adverse claim is but one basis for determining that the court does *not* have possession of the property; the *absence* of such a claim does not *per se* establish possession. It still remains for the estate to demonstrate that constructive possession exists. Absent such a demonstration, it cannot be *assumed* that the bankruptcy court may exercise jurisdiction over the property.[11a]

The approach urged by Debtor has indeed been recognized and adopted by several courts. *See In re Baldwin-United Corporation,* 12 B.C.D. 913, 915, 48 B.R. 49 (Bkrtcy.S.D.Ohio 1985); *In re Harry C. Partridge, Jr. & Sons, Inc.,* 48 B.R. 1006 (Bkrtcy.S.D.N.Y.1985). Such an approach is, however, fundamentally flawed. It would turn mere allegation into fact; by asserting that the money attributable to an account receivable is property of the estate, a debtor could, under the foregoing authorities, establish the constructive possession necessary for the bankruptcy court to exercise jurisdiction. Unless there is no question remaining as to the liability of the defendant to the estate, e.g., a final judgment from a court of competent jurisdiction or a stipulation by the defendant, it cannot be said that no dispute exists, and the money Debtor seeks to recover is not with the Debtor's constructive possession. Consequently, this Court cannot exercise jurisdiction over those funds or Debtor's claim thereto. *See In re Theobold Industries, Inc.,* 53 B.R. 506, 508 (Bkrtcy.D.N.J.1984).

It may be instructive to examine Debtor's action in the proper procedural context as well. Debtor essentially seeks an injunction to compel the defendants to pay money. Should Debtor prevail on the merits, the defendants would be required, on pain of contempt, to forthwith pay the judgment. Such a scheme is manifestly unfair to the defendants, who are thus deprived of significant procedural rights. A turnover order, unlike a money judgment by a state or federal district court, is less a determination of liability than an exercise of the court's equitable power. While the typical judgment is a mere "hunting license" for the prevailing plaintiff to pursue the defendant's assets, a turnover order renders the defendant answerable in equity to the court. To use turnover in the manner suggested by Debtor invites the question, what if the defendant cannot or will not pay? Is the defendant then subject to the wide range of sanctions available against those who disobey court orders?

> [T]o extend the proposition urged by the Debtor would mean that a Debtor may collect, by way of mandatory injunction, disputed claims to monies, claims based strictly on state law which are unliquidated and contingent. Certainly such procedure could not be sanctioned outside bankruptcy and there is no just reason why it should be sanctioned just because the entity seeking to collect disputed funds happens to be a Debtor under the Bankruptcy Code. To approve the proposition urged by the Debtor would be without a doubt, a gross violation of the most basic concepts of due process to which every Defendant is entitled, which involves at least the right to enjoy all the procedural safeguards otherwise available to all litigants in civil litigation.

*In re Chick Smith Ford, Inc.,* 46 B.R. 515, 518 (Bkrtcy.M.D.Fla.1985). Unless and until Debtor's claims against the defendants are liquidated in a court of competent jurisdiction or by agreement, they cannot be enforced here through a turnover order. *Accord, In re Theobold Industries, Inc.,* 53 B.R. 506, 508 (Bkrtcy.D.N.J.1984) ("Since the right to the payment of the claims [asserted by the estate] is contingent on a judgment establishing liability, the claims are not 'matured' ... Section 542(b), dealing only with matured claims, is inapplicable here").

---

**11a.** *Georgia-Pacific Corporation v. Sigma Service Corporation,* 712 F.2d 962 (5th Cir.1983) may appear to hold otherwise, but can be distinguished in that the defendant there admitted liability but contested whether the estate or third party claimant should be paid. Here there is no such admission of liability.

### 2. *Section 157(b)(2)(O)*

█ Debtor has asserted as a secondary basis for jurisdiction the residual grant of authority set forth in 28 U.S.C. § 157(b)(2)(*O*), which characterizes as core proceedings "other proceedings affecting the liquidation of the assets of the estate." Much of the Court's analysis of this provision has been set forth earlier, but with the indulgence of the local bar will be reiterated here as a prelude to the Court's inquiry into the constitutionality of the statute.

Debtor has alleged that the money attributable to the accounts receivable sought to be collected here is property of the estate, a notion which the Court cannot accept for reasons set forth above. By invoking § 157(b)(2)(*O*), Debtor is acknowledging in the alternative that the property of the estate in question is the chose in action resulting from Debtor's state law contract rights as against the various defendants. This theory clearly comports with Code § 541(a), which includes as property of the estate all legal and equitable interests of the debtor, including choses in action. Again, the particular chose in action before the Court in this proceeding is based upon state law contract principles. The defendants are not creditors. No basis for federal jurisdiction, other than the intervention of a petition for relief under Chapter 11, has been advanced. The Court cannot help but note that these were the identical circumstances facing the Supreme Court in *Marathon.* Most courts considering the jurisdictional problems surrounding a collections action in the bankruptcy courts have agreed that, before implementation of the 1984 Amendments, *Marathon* would have prevented this type of action in this forum. The opinions diverge as to the effect of the 1984 Amendments. The courts which have concluded that maintenance of collection suits in the bankruptcy court runs afoul of *Marathon* have stated simply that such proceedings would not be considered core proceedings. *See, e.g., In re Morse Electric Company, Inc.,* 47 B.R. 234 (Bkrtcy.N.D.Ind.1985). No mention has been made of the validity of the statute

itself; rather, the courts have focused on the interpretation advocated by the representatives of the estates. While this Court tends to agree that using § 157(b)(2)(*O*) in the fashion suggested here is improper, it seems quite clear that Congress intended just such a result.

The asset in question here, a chose in action, may be liquidated in one of three ways. It may be sold to a third party, a means contemplated by § 157(b)(2)(N). That subsection states that the bankruptcy court may issue orders approving the sale of property, except where the property involved is "property resulting from claims brought by the estate against persons who have not filed claims against the estate." It could be argued that a recovery by a debtor for breach of contract fits within this exception. The property interest here, however, did not *result* from a claim brought by the estate; rather the property interest here *is* the claim brought by the estate. Had Debtor received some *res* which itself required liquidation, the exception of § 157(b)(2)(N) might apply; where the chose in action is the property in question, however, it seems to fall outside the exception. In any case, to conclude that Congress intended "liquidation" of a chose in action to include a sale would be to conclude that Congress repeated itself in the very same paragraph and one subsection away. For all its faults, and they are legion, this jurisdictional provision of the 1984 Amendments has not been accused of redundancy.

A second mechanism for liquidation is compromise and settlement, a possibility not present here. The third means by which this asset might be liquidated is litigation. To conclude that this alternative was not intended by Congress is to rob the quoted portion of § 157(b)(2)(*O*) of any effect. It should be noted that Congress was aware of the desirability of excluding certain choses in action from the jurisdictional definition; a bankruptcy court has no jurisdiction to make a final determination of a debtor's personal injury or wrongful death action. Indeed, this exception to the bank-

ruptcy court's power to preside over proceedings affecting the liquidation of assets of the estate is contained in the same provision at issue here. Congress plainly knew how to exclude the liquidation of choses in action by the debtor from this Court's jurisdiction; that it specifically excluded certain tort claims, without any indication that other state law claims, such as breach of contract, were to be similarly excluded, compels the conclusion that the latter were in fact intended to be subject to final disposition by the bankruptcy courts.[12]

There can be little question that this manifest intention of Congress to permit the bankruptcy court to exercise jurisdiction over litigation by the estate against non-creditor defendants in the course of liquidating a chose in action flies in the face of *Marathon.* The courts are thus placed squarely between the constitutionally permissible jurisdictional parameters for Article I courts prescribed by the Supreme Court, and the apparent liberality of the subsequent Congressional enactment. It is clear that where the latter runs afoul of the strictures of the former, the former must control. Yet the constitutionality of a statute is presumed;[13] and before the Court will declare the statute void, it will assay a look at the floor debates, mindful of the ruling in *Garcia,*[14] in an effort to grasp at some basis to infer a Congressional intent to stay within the confines of *Marathon.*

It is apparent that precisely the sort of problem facing the Court today was foreseen by the Senate, which included in its proposal for the 1984 Amendments a provision requiring remand to the state courts in any proceeding based solely upon state law. As Senator Hatch lamented after the Committee deleted that provision,

"Permitting federal bankruptcy courts to adjudicate state law claims would deprive state law claimants of the protections of state law merely because they happened to do business with or be injured by a party who later became bankrupt. Each state has its own safeguards for the judicial process, such as evidentiary or jury trial rules. Permitting a federal bankruptcy court to assert jurisdiction over state law claims will deprive state law claimants of the protections of their own state laws. In this sense, this is an issue of litigation leverage. The bankrupt creditor would like to bring all cases in a single forum which may be distant from the situs of the injury or infraction. The state law claimant would prefer the ease of litigating where the action arose. The Constitution resolves these issues by preserving state court jurisdiction over purely state law issues. The broad jurisdictional grant of the 1978 act sought to improve judicial efficiency. Not only was that found unconstitutional, a recent commentary suggests that 'exercise of jurisdiction by bankruptcy courts to the full extent permitted by the Code may impede rather than facilitate congressional goals because full exercise may congest bankruptcy courts with state law issues ...' [citation omitted] in order to pass constitutional muster, any bankruptcy amendments must remove adjudication of purely state law claims from federal courts."

The Senator's primary concern was that federal district courts would, under the Amendments, be able and perhaps compelled to adjudicate strictly state law claims where no other basis of federal jurisdiction, e.g., diversity, existed. More to the point in these proceedings, however, is the memorandum Senator Hatch attached to his comments.

"Even where the district court can constitutionally exercise jurisdiction over state based actions in cases where there is diversity jurisdiction, it is clear, from *Marathon,* that the bankruptcy court, in its role as adjunct to the district court,

---

**12.** *See also* § 157(b)(5), which provides that certain tort claims must be tried in the district court; no mention is made as to the proper forum for other state law claims of the estate.

**13.** *See Marathon,* 458 U.S. at 61, 102 S.Ct. at 2866.

**14.** *See* Note 6, *supra.*

**789**

can adjudicate no such causes of action. Therefore, the matters over which the bankruptcy court can exercise summary jurisdiction—core proceedings (28 U.S.C. 157(b))—should exclude adjudication of state law based causes of action."

130 CONG.REC.S. 8893–8897 (daily ed. June 29, 1984), *reprinted in* 1984 U.S. CODE CONG. & AD.NEWS 577, 585. It is clear from the remarks of members of the Conference Committee that Congress was aware of these potential problems, considered them, and consciously eliminated the safeguards proposed by the Senate. It is equally clear that the Conference Committee sought, as under the 1978 Code, to make the bankruptcy court a central clearinghouse and liquidating forum, in direct contravention of the ruling in *Marathon*. As Representative Kastenmeier, a member of the Committee, stated,

"The change in the definition in the Senate passed bill would have contradicted the basic purposes of the consolidated jurisdiction we adopted in 1978.... it would have dissipated the assets of the estate by creating a multiplicity of forums for the adjudication of parts of a bankruptcy case. The conference report largely rejects the Senate limitations on the tasks which are to be performed by a bankruptcy judge."

130 CONG.REC.H. 7492 (daily ed. June 29, 1984), *reprinted in* 1984 U.S.CODE CONG. & AD.NEWS 579. While the Court does not rely upon these comments of individual legislators as the basis for its conclusion,[15] they certainly are supportive of the inference drawn by the Court, i.e., that Congress intended collection actions such as those at bar to fall within the core jurisdiction of the bankruptcy court. As a result of this intention, the very cause of action at issue in *Marathon* would, under the 1984 Amendments, be considered subject to Article I bankruptcy court's final orders. Section 157(b)(2)(*O*) is effectively nothing more than a legislative attempt to reinstate

a jurisdictional scope expressly determined by the Supreme Court to be impermissibly broad. To the extent § 157(B)(2)(*O*) may be used, or was intended to be used, to confer upon this Article I Court "the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to appellate review,"[16] it is clearly unconstitutional. This Court is not swayed by the arguments, frequently presented by counsel for debtors and trustees, that the ease of collection, the administrative convenience or efficiency, and expediency of pursuing collection actions in this forum are paramount. *Cf. In re Bucyrus Grain Co., Inc., supra.* This Court is bound first and foremost by the Constitution as interpreted by the higher federal courts, and will not permit considerations of expediency or facilitation to usurp the decisions of those courts.

For the reasons stated above, this Court holds that actions to collect accounts receivable based upon state law contract principles do not fall within the scope of turnover actions as contemplated by § 542 and § 157(b)(2)(E), absent a final judgment from a court of competent jurisdiction, a stipulation, or some other binding determination of liability. In addition, the Court holds that use of § 157(b)(2)(*O*) as a jurisdictional basis for collection of accounts receivable is unconstitutional under *Marathon*. The Court is therefore without jurisdiction to make a final determination on the merits, absent consent of the parties, or to enter a default judgment as to any noncreditor defendant. *Cf. In re Castlerock Properties*, 781 F.2d 159, 162 (9th Cir. 1986); *Boise City Farmers Cooperative v. Palmer*, 780 F.2d 860, 867 (10th Cir.1985). Counsel will be given the opportunity to replead under § 157(c), move to withdraw the reference, or abate these proceedings pending a determination from an appropri-

---

**15.** Indeed, the sentiments expressed by Representative Kastenmeier on behalf of the Conference Committee are clearly reflected in the last sentence of 28 U.S.C. § 157(b)(3).

**16.** *Thomas v. Union Carbide Agricultural Products Company*, page 4, *supra*.

ate state forum, and is directed to advise the Court within ten days of entry of this opinion of the option selected.